## Gillis *against* M'Kinney.

A tenant in common of a tract of land may maintain *assumpsit* against his co-tenant to recover his share of the rent of the premises which they had demised to a third person, upon proof that the whole rent had been paid to the defendant, who promised to pay to the plaintiff his share of it.

ERROR to the Common Pleas of *Jefferson* county.

James L. Gillis against Robert M'Kinney. Action on the case in *assumpsit*. The case is fully stated in the opinion of the court.

*Jenks* and *Buffington*, for plaintiff in error, cited 2 *Whart*. 40; 1 *Chit. Pl.* 379; 7 *Watts* 380.

*Shunk*, for defendant in error, cited 10 *Serg. & Rawle* 219 ; 4 *Watts & Serg.* 14.

The opinion of the Court was delivered by

KENNEDY, J.—This action is *assumpsit*, instituted in the court below by the plaintiff in error to recover from the defendant the value of a quantity of lumber taken and disposed of by the latter, which the former alleges belonged to him. It appears from the evidence that they were tenants in common of a tract of land on which there were a saw-mill and some other buildings; that they let the property to a man of the name of Mead on shares; that is, Mead was to give the plaintiff and defendant one-half, or each one-fourth of all the lumber he should saw at the mill. He continued to occupy the property and saw lumber at the mill from the autumn of 1839 till some time in 1841. In the spring of 1840, all the lumber sawed at the mill, and coming to the plaintiff and the defendant as their proportion, was taken away and disposed of by the defendant, under an agreement that the plaintiff should have an equal quantity at the mill for it in the spring of 1841. The defendant, however, according to the evidence, instead of leaving such equal quantity for the plaintiff at the mill in the

spring of 1841, took all the lumber that was coming from Mead to them as their proportion, and disposed of it. Some evidence was also given of repairs and buildings made on the land, paid for mostly by the defendant, for which the plaintiff denied his liability to contribute, because done without his consent, and contrary to an agreement made between them, that such repairs or buildings should not be put on the property without the consent of both parties.

The court below, after the evidence was closed on both sides, at the instance of the counsel for the defendant, charged the jury, that as the evidence on the part of the plaintiff showed that he and the defendant were tenants in common of the land and the sawmill, *assumpsit* would not lie for the plaintiff's claim; to which the plaintiff's counsel excepted, and have assigned the same for error here.

The evidence on the part of the plaintiff went clearly to show an agreement of the defendant, that, if the plaintiff's agent (the plaintiff himself being absent in the State of New York) would permit the defendant to take away and dispose of, for his own use, all the lumber at the mill in the spring of 1840 belonging to both of them, he, the defendant, would leave an equal quantity for the plaintiff at the mill in the spring of 1841; and that the defendant under this agreement took the lumber, amounting in all to about 113,000 feet; and that instead of leaving any lumber for the plaintiff at the mill in the spring of 1841, he took all that was coming to them from Mead, the tenant, and disposed of it. Now, if the jury should have believed the evidence going to establish these facts, there can be no doubt but the plaintiff was entitled to maintain this action on the ground that the defendant had broken his promise and engagement made with the plaintiff in the most express terms. But suppose there had been no express engagement of the kind, but that the defendant had taken all the lumber coming from Mead to him and the plaintiff as rent, and sold it; he would unquestionably have been accountable to the plaintiff for his proportion of it, in *assumpsit* for money had and received. If the rent had been payable in money, and the whole of it had been received by the defendant, it will, I apprehend, strike the mind of every one, at the first blush, that *assumpsit* for money had and received would lie against him by the plaintiff to recover his proportion. But the circumstance of its being payable in lumber can make no difference after the defendant had converted it into money. It might as well be said that one of two joint obligees, who receives the whole amount of the bond, would not be liable in an action of *assumpsit* to his co-obligee for his proportion of it, as that a co-lessor, who receives the whole of the rent, is not liable to his co-lessor for his proportion of it in an action of *assumpsit*. In *Coles* v. *Coles*, (15 *Johns.* 159), it was held, that if two tenants in common sell the common property, and one of them receives the whole

of the purchase money, the other may have *assumpsit* for his proportion. And in *Brigham* v. *Eveleth*, (9 *Mass.* 538), it was adjudged, if one tenant in common receive the whole profits of the common property, that he is liable to be sued in *assumpsit* by his co-tenant for his proportion; which shows that this action is suited to the case between these parties under any view that can be taken of it. So far as the evidence discloses any matters of account between the parties, to be settled and adjusted, relating to the common property, a jury would be quite as competent, under the direction of the court, to do it, as auditors in an action of account-render; which latter action ought never to be resorted to when *assumpsit* will answer the same end, because it is attended with great delay and some perplexity.

Judgment reversed, and a *venire de novo* awarded.