# Allegheny Insurance Co. *versus* Ransom *et al.*

1. A vessel insured on a valued policy for one-third its value was wrecked and the underwriters paid as for a total loss. They were subrogated to all the rights of the insured, for the purpose of indemnifying themselves.

2. The insured claiming that they were tenants in common, sued the underwriters in assumpsit and in a special count alleged that the underwriters took possession of the wreck and converted it and thereby became liable to pay the insured their share of its value. *Held*, that the count was bad: such liability did not result from the facts.

3. The underwriter's agent, after examination of the wreck, determined that it was not worth the risk and expense of raising; they did nothing, nor prevented the insured from raising the wreck. *Held*, that the underwriters not being bound to look after the interests of the insured and not having received anything from the wreck, were not liable to the insured for any part of its value.

October 31st 1871. Before THOMPSON, C. J., READ, AGNEW, SHARSWOOD and WILLIAMS, JJ.

Error to the Court of Common Pleas of *Allegheny county* : No. 193, to October and November Term 1870.

This was an action of assumpsit, commenced March 14th 1866, by James Ransom and others against The Allegheny Insurance Company.

The first count of the declaration was that Ransom, on the 22d

of September 1859, procured from the defendants a policy, by which they insured the steamer Indianola for one year for $3500, "by which policy said boat was valued at the sum of $12,500,"that during the continuance of the policy the steamer was lost by an accident, of which loss the plaintiffs notified the defendants, and the defendants elected to take and did take possession of the steamer under the policy, and converted the wreck of the steamer to their own use; the wreck was of the value of $3500, and the defendants thereby became liable to pay the plaintiffs, "who were the true and lawful owners of said wreck, a sum of money which bore the same proportion to the whole value of said wreck, which the uninsured portion bore to the agreed valuation," and the defendants being liable, promised to pay.

The declaration contained the common counts also. By the policy the insured bound himself in case of misfortune resulting from any peril insured against, to use every practicable effort for the safeguard and recovery of said steamboat, and if recovered, to cause the same forthwith to be repaired, and in case of his neglect to do so, the insurers might recover the boat and repair her for account of the insured, and the insurers to contribute to the cost in the proportion the sum insured bore to the agreed value of the boat; the assured should not abandon until it should be ascertained that the recovery and repair of the boat would be impracticable, nor sell the wreck without the consent of the company; the acts of either party in preserving, &c., shall not be considered a waiver of the abandonment. She was insured also by the Eureka Company for $5000, which that company compromised for $4400, and surrendered their interest in the wreck to the owners. The defendants paid the whole amount for which they had insured, a judgment having been recovered against them in an action on the policy.

The case was tried March 15th 1870, before Collier, J. The evidence for the plaintiffs was that the boat sank in the Red river, on the 5th of February 1869, the captain and crew did all they could to save her; the captain immediately gave notice by telegraph to the company, and in a short time Captain Dean, the agent of the insurers, came down; he said the wreck must be turned over to him, and he took charge of it. Dean said he was representing the two offices; everything was given up to him; Dean made an agreement for the sale of the wreck to Ransom for $2900; the agreement was afterwards rescinded at Dean's solicitation; Captain Haslop offered Dean $3500 for the wreck as she lay; he refused to take it; the wreck was worth that sum; she was raised and afterwards seen in the rebel service; Dean had offered Haslop $2500 to raise the wreck, but after making some effort he abandoned it; Dean said that he had sold her to Captain Greenlee.

19 P. F. SMITH—32

The defendants gave evidence of payments by them to the owners of the boat and the crew for wages, from the time of the loss, amounting to about $830. Also expenses paid to Captain Dean, amounting to $150.

Each party submitted a number of points. The plaintiffs' asserted that abandonment is not to be presumed but is to be proved by unequivocal evidence; that the interest of the owners not having been wholly insured, if they abandoned it was only to the extent of their insurance and they were tenants in common with the insurers; that the Eureka Company having surrendered their interest to the insured, the plaintiffs were entitled to the interest of that company also, and they were entitled to the interest of that company at least; that Dean having taken possession of the wreck, the defendants were liable to the plaintiffs for their proportion of what it was worth, and that it was incumbent on the defendants to show that they did not realize anything from the wreck; and that without their neglect or carelessness.

The defendants' points were, that the insurance having been upon a valued policy; the whole amount of the insurance having been paid and the vessel abandoned as a total loss, the wreck passed to the defendants absolutely; that the recovery on the policy as for a total loss was a bar to the plaintiffs' recovery in this suit; that claiming as joint owners, the plaintiffs could not recover against the defendants without having the proportionate liability settled, and that the plaintiffs, not having shown that the defendants realized anything from the wreck, they could not recover in this action.

The court affirmed the plaintiffs' points and denied the defendants'; the verdict was for the plaintiffs for $2604.96.

The defendants took out a writ of error and assigned the instructions of the court for error.

*J. P. Penney,* for plaintiffs in error, on the question of abandonment cited Comegys *v.* Vasse, 1 Peters 193; Chesapeake Ins. Co. *v.* Stark, 6 Cranch 268; Huston *v.* Phœnix Ins. Co., 1 Washington C. C. 400; Ins. Co. *v.* Francia, 9 Barr 390; Cincinnati Ins. Co. *v.* Bakewell, 4 B. Monro 541.

*C. S. Fetterman* and *J. Barton,* for defendants in error.—If there had been no abandonment, and the insurers had taken possession of the vessel, and failed to return her properly repaired within a reasonable time, they would thereby render themselves liable as for a total loss: Norton *v.* The Lexington Ins. Co., 16 Ill. Rep. 251; Copelin *v.* Ins. Co., 9 Wallace 461. If there was an abandonment of the boat to the Allegheny Insurance Company, though it were absolute and unconditional in form, its effect was to transfer the plaintiffs' interest in the wreck only

[Allegheny Insurance Co. v. Ransom.]

so far as the same was covered by the policies of insurance, and as to the interest not covered by the policies, the owners were their own insurers, and entitled to a proportionate share of the salvage or proceeds of the wreck: 2 Par. Mar. Ins. 405; 2 Condy's Marsh. on Ins. 608; 2 Arn. on Ins. 1201; Cincinnati Insurance Co. v. Duffield, 6 Ohio Rep. 200. By the abandonment, the insured and insurers became tenants in common of the wreck: 2 Condy's Marsh. on Ins. 608. The form of the action is the appropriate one. Trespass will lie against a co-tenant for a destruction of the common property: Critchfield v. Humbert, 3 Wright 427; Gillis v. McKinney, 6 W. & S. 78; Hill v. Hill 7 Wright 521; 1 Pars. on Ship. and Adm. 93, and authorities there cited. There can be but one abandonment; and whether made to one underwriter or to several, it enured to the benefit of all, and all are joint owners: 1 Pars. Ship. and Adm. 107, note 2.

The opinion of the court was delivered, January 9th 1872, by

SHARSWOOD, J.—Upon the principal question raised in the court below and discussed here—which is certainly very important and interesting—two very respectable courts of our sister states have given opposite judgments: Cincinnati Insurance Company v. Bakewell, 4 B. Monr. 541; Cincinnati Insurance Company v. Duffield, 6 Ohio (N. S.) 200. The ruling of the learned judge below, which adopts the latter of these two judgments, is certainly sustained by the concurrent opinions of the most distinguished of the foreign jurists and writers on commercial law. Boulay-Paty lays it down as an uncontroverted point that where the assured has had only a part of his interest in the subject covered by the policy, he is only obliged, in order to recover for a total loss, to abandon the proportion so covered, and remains owner of that which was not insured; and he explains very clearly the principles upon which the loss and salvage are to be adjusted in such a case: Traité des Ass. tom. 2, ch. 17, s. 13, citing Pothier, Valin, De Laca and Casaregis. See also 2 Arnould on Ins. 1159.

We give no opinion, however, upon this question, because in any view of the case the plaintiff below showed no title to recover. Conceding fully the postulate with which they set out, they were tenants in common with the defendants of the "Indianola" in certain proportions; nor would the case be varied if in point of fact there was no abandonment. They claimed and recovered the entire sum insured as for a total loss, and the defendants were undoubtedly subrogated to all their rights for the purpose of indemnifying themselves. The form of action was assumpsit—special with the common money counts. The special count alleged that the defendants took possession of and converted the wreck, and by reason thereof became liable to pay the plaintiffs their share of its value. This count was clearly bad on general de-

murrer; no such liability resulted in law from the facts upon which a promise could be founded. As to the money counts the plaintiffs did not show that the defendants had ever received one dollar or one dollar's worth from the wreck. They seem to have gone upon the idea that they had a right to maintain the action for their share of what the defendants might have realized by a sale. But this is founded upon an entire misapprehension of the relation between them. The defendants were not trustees for them. According to their own theory, if there was an abandonment all they ceded to the defendants was so much only as was covered by the insurance. They remained the owners of that for which they stood their own insurers. Of course the defendants had no title to sell more than had been abandoned to them. It may be that when one tenant in common, who is in possession of the joint property, abandons it to inevitable destruction, it would be the same thing as if he had destroyed it himself, which would be a conversion, and entitle his co-tenant to maintain trover and recover the value of his share in damages. The authorities certainly go that length. But that was not this case. The defendants through their agent, after examination and inquiry, thought that the sunk steamer was not worth the risk and expense of raising. They did nothing. The plaintiffs themselves might have raised the wreck if they had seen fit. The defendants did nothing to prevent it. It was just as much their right to look after their interests as it was the defendants. No action of trover, therefore, could have been maintained, and certainly without evidence that the defendants had recovered or received anything for which they were liable to account to their co-tenants, assumpsit would not lie: Holliday *v.* Camsell, 1 T. R. 658; Barnardiston *v.* Chapman, 4 East 121; Barton *v.* Williams, 5 B. & Ald. 395; Fennings *v.* Lord Grenville, 1 Taunt. 241; Martin *v.* Knowllys, 8 T. R. 145; 3 Steph. N. P. 2672, note a; Gillis *v.* McKinney, 6 W. & S. 78; Rank *v.* Rank, 5 Barr 211; Agnew *v.* Johnson, 5 Harris 373; Borrell's Adm'rs. *v.* Borrell, 9 Casey 492.

Judgment reversed.