The Enterprise Oil and Gas Company, Appellant, *v.* National Transit Company.

| 172 | 421 |
|-----|-----|
| 22 SC | 487 |
| 172 | 421 |
| 24 SC | 176 |
| 172 | 421 |
| 35 SC | 185 |

*Tenants in common—Liability to account—Action—Assumpsit.*

Assumpsit can only be maintained by one cotenant against another on an express promise to pay rent, or to account. In the absence of an express promise of a liquidated sum, all a cotenant is obliged to account for is a share of the profits.

*Lease—Oil and gas lease—Assumpsit—Cotenants.*

Several cotenants of an oil lease assigned the lease to an operator who was to deliver to them a part of the product. One of the joint owners did not join in the assignment, and notified the assignee not to deliver any oil to his cotenants. *Held* (1) that the party not joining in the assignment was not entitled to his share of the oil without proving that his cotenants had received more than their share; (2) that if he chose to affirm it, he must take his share with the others upon a distribution of the royalty after deducting all proper charges and expenses; (3) that if he did not affirm the lease, he had no claim to any share in the royalty, and could only look to the lessee as a cotenant who had not acquired his title.

Argued Oct. 22, 1895. Appeal, No. 205, October Term, 1895, by plaintiff, from judgment of C. P. Butler County, Dec. T., 1895, No. 71, on verdict for defendant. Before STER-

RETT, C. J., GREEN, WILLIAMS, McCOLLUM, MITCHELL, DEAN and FELL, JJ. Reversed.

Assumpsit to recover royalties under an oil lease. Before GREER, P. J.

The caption of the case as it stood upon the record was as follows: C. J. D. Strohecker, J. H. Latchaw, J. D. Stauffer, J. T. Johnson, W. A. Goehring, Householder and Jones, C. M. Root, S. M. Kidd, Geo. Snyder, S. E. Neice and R. M. Harper, partners doing business under the firm name of the Enterprise Oil & Gas Company, vs. National Transit Company.

At the trial it appeared that in October, 1889, C. J. D. Strohecker was the owner of several oil and gas leases. In that year he assigned said leases to the Enterprise Oil & Gas Company. It appeared that the Enterprise Oil & Gas Company was an association of partnership in which there were thirty-two shares, each share being valued at $100. The company was not organized as a limited partnership, nor as a corporation. J. T. Johnson denied that he had joined any such partnership, and claimed that Strohecker had sold to him for $200 an undivided one sixteenth in all of the leases.

On October 17, 1890, by an instrument in writing, the Enterprise Oil & Gas Co. assigned to J. M. Latchaw one half of the leases, retaining a royalty of one eighth. Latchaw subsequently formed a company called the Latchaw Armor Company. A well was drilled, and oil found in paying quantities. One eighth of the oil was run into the lines of the National Transit Company in the name and to the credit of the Enterprise Oil & Gas Company. On October 1, 1893, the latter company had 1068 barrels to its credit. About this time John T. Johnson notified the National Transit Company not to deliver any oil to the Enterprise Oil & Gas Company. Johnson alleged that he had bought one sixteenth of the leases from Strohecker, but that he had never entered into any partnership with the other tenants in common. The attorney for the National Transit Company filed an affidavit of defense setting forth inter alia, " The lease under which said well was drilled was made by Keziah Allen to C. J. D. Strohecker. The said C. J. D. Strohecker by assignment in writing bearing date the —— day of ————, assigned and conveyed to J. T. Johnson the undivided one sixteenth interest

in the lease covering the western half of the Keziah Allen farm. The said J. T. Johnson has never sold or in any wise parted with his one sixteenth interest of the lease in suit. The oil in controversy in this suit was produced from said one sixteenth interest so owned by the said J. T. Johnson and was delivered by the said defendant company to the said J. T. Johnson in the usual course of its business. The National Transit Company has not in its custody or possession any oil belonging to the said plaintiffs," etc.

Johnson also filed an affidavit to the same effect.

Plaintiff's points were as follows:

1. The plaintiffs have shown a perfect paper title for the land covered by a written lease on the Keziah Allen farm out of which the oil in suit was produced, and to overcome said writing by parol proof it must be by the testimony of two witnesses or what is equivalent to two. *Answer:* That is the law as regards the ordinary transaction in land, and the defendant here does not claim under a writing, but claims under the arrangement he had made with Mr. Strohecker, as detailed by him; you have his testimony and the testimony of Mr. Nichols as to what occurred when he made the purchase of the undivided one sixteenth; with this qualification we affirm this point. [1]

2. Defendant company, to avoid a recovery of the oil in suit and in their possession, sets up a parol contract for a sixteenth interest in the Keziah Allen lease; to take a parol sale of land out of the statute of frauds and perjuries the contract must be shown by clear and satisfactory proof, the land must be clearly designated, the boundaries fixed, exclusive possession taken in pursuance of the contract and continued, and purchase money paid and such valuable improvements made on the land as cannot be compensated in damages. *Answer:* As a question of law we affirm this point; that is the law; but in this case the suit is brought for money, the value and price of oil that has been produced on this lease, and we do not think that the same strict rule is in force as to this case. [2]

5. If the jury believe that J. T. Johnson purchased a sixteenth interest in the Keziah Allen farm along with other leases not located or boundaries defined, and no possession taken exclusive of other interests in said leases, there can be no recovery

and the verdict should be for the plaintiffs. *Answer :* We will not affirm that in that shape ; where a man buys land or an interest in land and takes such possession and such control as others interested in it with him take, he has taken then such possession as the law requires that he should have, to take the case out of the statutes ; he has no right to any other possession, and if Mr. Johnson took such possession as other men took who had undivided interests in the oil well, contributed towards the drilling and operating of it, he would have such possession as the law would require him to have to take the case out of the statutes of frauds and perjuries. [3]

6. In order for the defendant company to prevent a recovery it is incumbent on said defendant company to show that J. T. Johnson had a valid title to the one sixteenth in the Keziah Allen lease out of which the oil in suit was produced. *Answer :* We affirm that and say that if you believe that Mr. Johnson purchased the undivided one sixteenth interest in this Keziah Allen lease before the organization of this company and that he never joined the company, never became a partner in any way and paid his money, that he would have such a valid interest and title as would entitle him to recover this money. [4]

Verdict and judgment for defendant. Plaintiff appealed.

*Errors assigned* were, (1–4) above instructions, quoting them.

*Lev. McQuistion, J. C. Vanderlin* with him, for appellant.— Persons holding themselves out to third parties and dealing with them as partners will be bound to such third parties as partners, even though there may have been no agreement of partnership among themselves.

If Johnson owned no interest in this lease, he could not recover any part of the oil. If he owned an interest in the Enterprise Oil & Gas Company, he was entitled to recover his pro rata share of the oil after the expenses of the company were paid. The plaintiff never refused to give him his proportionate share of the oil as a member of the Enterprise Oil & Gas Company ; but upon what theory the court and the jury by their verdict for defendant gave him all the oil run into the line of the National Transit Company is an anomaly in law.

*R. P. Scott*, for appellee.—Johnson must be treated as the owner of a separate, undivided one sixteenth interest in said leases for the production of oil: Dunham v. Loverock, 158 Pa. 197 ; Butler Savings Bank v. Osborne, 159 Pa. 10.

The fact that said owners operated said leases, drilled wells thereon, pumped the same and paid his or their respective shares of the cost and expense incurred therein, did not constitute them partners: Dunham v. Loverock, 158 Pa. 197 ; Bank v. Osborne, 159 Pa. 10 ; Taylor v. Fried, 161 Pa. 53.

A grant of the exclusive right and privilege of digging and boring for oil must be treated as a lease for the production of oil, and not as a sale of the oil or of an interest in the land : Duffield v. Hue, 129 Pa. 94.

OPINION BY MR. JUSTICE MITCHELL, January 6, 1896 :

This case was unfortunately tried on a wrong theory throughout. The oil was received by the defendant for account of plaintiff, and so credited on the defendant's books. Prima facie therefore it belonged to plaintiff, and though it would be a good defense to show that it was claimed by the real owner, yet such defense involved the burden of proof that the claimant had in fact the better title. This the defendant entirely failed to show. It defended on Johnson's title, or rather permitted him to do so in its name.

Johnson's interest, as agreed by all parties, was an undivided sixteenth. Whether it was a sixteenth in the partnership, or a sixteenth in the leases as a tenant in common, the issue on which the jury were permitted to find a verdict, was, for the purposes of this case entirely immaterial. In either aspect, as already said, his interest was undivided, and he never had any separate possession either of the land or of the oil. There was not only no evidence that this particular oil was his, but on the contrary a prima facies that it was the plaintiff's. It was delivered by their lessee to the defendant as a carrier for them. The possession of the carrier was their possession as against all the world but a claimant showing a better title. The utmost that Johnson showed, even on his own claim to be a tenant in common, was that as to one sixteenth of the oil his title was the same, as good but no better than that of the other fifteen cotenants represented by the plaintiffs. The status of the case

even in the most favorable light for Johnson, was the same as if he had been suing his cotenants for his share of the profits of the land.

The rights and remedies of tenants in common among themselves have been the subject of some discussion in this state. At common law, as each was entitled to the joint possession of the whole, there was no liability to account to each other, except upon an express agreement to act as bailiff, or an actual ouster which would sustain an ejectment for restoration of possession and mesne profits. . The act of 4 Anne, c. 16, sec. 27, dispensed with the necessity of express appointment as bailiff, and gave an action of account against the cotenant "receiving more than comes to his just share or proportion," and in this state it has been settled after some variance of opinion, that the action is not necessarily in account render, but where there has been an express promise, it may be in assumpsit. Gillis v. McKinney, 6 W. & S. 78. In Borrell's Adm. v. Borrell, 33 Pa. 492, the majority of the court sustained assumpsit on an implied obligation to account, but this case was practically overruled in Kline v. Jacobs, 68 Pa. 57, where the subject was discussed by SHARSWOOD, J., and the rule clearly laid down that there is no implied obligation to account for mere use and occupation by one tenant in common, who has by his title a right of possession of the whole, although it is joint, and that assumpsit can only be maintained on an express promise to pay rent or to account. The best summary of the law in our own books will be found in the admirably clear and accurate opinion of Judge THAYER in Norris v. Gould, 15 Weekly Notes, 187.

But all of our cases including even those which have most favored the action in assumpsit, such as Borrell v. Borrell, supra, and Luck v. Luck, 113 Pa. 256, have held that unless on an express promise of a liquidated sum, all the cotenant is obliged to account for is a share of the profits. The utmost therefore that Johnson could have recovered if this had been a direct action against his cotenants would have been the excess which they had received over their proper share of fifteen sixteenths. But he was allowed to recover the whole of the oil in controversy on the ground that as a tenant in common of one sixteenth he was entitled to one sixteenth of the entire product of the lease, without having given a scintilla of evidence that

any of his cotenants had received more than their due share. Under the evidence as it stood there was no defense at all made out, and the jury should have been directed to find for plaintiffs for the full amount of the oil.

There is another difficulty in the way of Johnson's title in the present case. The oil in controversy was delivered by the lessee to his lessors the plaintiffs as rent under his lease. Johnson cannot affirm and repudiate the lease in the same breath. If he is a party to it, he must take his share as the others do upon a distribution of the rent after deducting all proper charges and expenses. If he is not a party to the lease he has no claim to any share in the rent, and must look to the lessee as a cotenant who has not acquired his title.

Judgment reversed and venire de novo awarded.