Opinion by
Porter, J.,
The plaintiff in this action of assumpsit filed a statement averring that the decedent had received various sums of money from different sources to the use of the plaintiff. The most important items related to the alleged receipt by the decedent, as the agent of the plaintiff, of certain payments made by C. H. Wells upon account of the purchase money of certain real estate situate in the state of New York, which the plaintiff had under articles of agreement sold to Wells, on January 1, 1886. The learned judge of the court below was of opinion that the obligation of the decedent to pay over to the plaintiff the money so received was within the operation of the statute of limitations and, upon the question reserved, entered judgment in favor of the defendants, non obstante veredicto, in so far as that element of the claim was involved. The plaintiff contends that George Gershum Dorrance, the decedent, received the money from Wells as trustee under the will of George Dorrance, deceased, who was ■ the father of both the parties, and that the trust was an active one under the provisions of which the trustee was to retain the principal during the period of his natural life, and that *182 the statute of limitations did not begin to run in favor of the decedent from the time he received the money.
The provisions of the will of George Dorrance which relate to the tract of land in question are as follows: “Item VI. I give, devise and bequeath to Benjamin Dorrance and George Gershum Dorrance, my executors, .... All that certain lot of land lying in the Town of Woodhull, in the County of Steuben, and State of New York, bounded on the north by a highway; containing about one hundred and twenty-four and one-quarter acres, being lot No. 60, now occupied by C. H. Wells. ... To have and to hold the said two lots of land to the said Benjamin Dorrance and G. G. Dorrance, and the survivor of them during their natural lives, and the natural lives of the survivor of them in trust, nevertheless to pay to my son Charles Dorrance, the rent, issues and profits and income of said two lots of land yearly during his natural life, and to his heirs after him should he die before my said life estate terminates.” The seventh item of the will devised the said lands, “in which a life estate is above given to Benjamin and G. G. Dorrance in trust and after said life estate shall have terminated,” to Charles Dorrance, this plaintiff, “to have and to hold the said lots of land after said life estate therein shall have terminated with the appurtenances to the said Charles Dorrance, his heirs and assigns forever.” Benjamin Dorrance died within a few days after his father, and George G. Dorrance alone qualified and acted as executor of his father’s will.
The imposition upon the trustee of the duty to receive and pay over the income involved the necessity of management and care of the real estate, and the trust created was an active one, and, by the terms of the will, continued during the life of the trustee, if the land to which it referred ever came within the operation of this will: Bacon’s Appeal, 57 Pa. 504. The will conferred upon the trustee no power to sell the land and reinvest the proceeds. Charles Dorrance, this plaintiff, took under this will the entire beneficial interest, or vested equitable estate during the existence of the trust, and he took, also, a vested estate in fee simple in remainder, to take effect in *183 possession upon the death of the surviving trustee. The will imposed no barrier to the alienation by Charles Dorrance of the estate which he took under its provisions. He could sell his interest in the land, receive the purchase money and dispose of it as he saw fit, absolutely free from the control of the trustee.
The evidence produced by the plaintiff rendered it doubtful whether the Wells tract had ever come within the operation of the trust created by the will of George Dorrance. George Dorrance had entered into a written contract with Wells for the sale of the tract of land and the latter was in actual possession, as purchaser, at the date of the death of the former. That contract was offered in evidence in the court below, but the appellant has not printed it in his paper-book and we know nothing of its terms. This matter seems to become unimportant, however, because of the transactions which followed the death of George Dorrance. The appellant conceded, upon the trial in the court below, that George G. Dorrance, as trustee, never had possession of this tract of land and never received from it any rents, issues or profits. Charles Dorrance, on January 1, 1886, after the death of George Dorrance, entered into a written agreement with Charles H. Wells for the sale of the land in question to the latter, and Wells covenanted to pay the purchase money to Charles Dorrance. This sale involved no violation of the provisions of the will of George Dorrance and the purchase money was the individual property of Charles Dorrance, free from the restrictions or limitations of any trust created by that will. Wells from time to time made payments on account of the purchase money and thus became vested with an equitable title to the interest in the land which under the will had passed to Charles Dorrance. George G. Dorrance may have received payment of a part of the purchase money provided for in this agreement, but there is nothing in the evidence which would warrant a finding that he received it in any other character than merely as the agent of Charles Dorrance. This money was no part of the estate of George Dorrance and was not subject to the provisions of his will. Charles Dorrance was entitled to receive the money from *184 George G. Dorrance the, moment Wells had made the payment, and the transaction involved nothing more than the authorized receipt of money by one for the use of another. “It may be conceded that the obligation was in the nature of a trust; but the remedy for recovery of the money was at law, aud the trusts which are not affected by the statute of limitations are only those technical and continuing trusts over which the chancellor has exclusive jurisdiction. A person who receives money to be paid to another, or to be applied to a particular purpose, and does not pay it to the person or apply it to the purpose intended, is within the operation of the statute of limitations:” Hostetter v. Hollinger, 117 Pa. 606. The first six specifications of error are dismissed.
The seventh and eighth specifications of error are without merit. The action was in assumpsit and the statement averred, as to the lots to which the evidence offered referred, that . George G. Dorrance had, during a certain period, received and appropriated to his own use, rents for said lots at a certain fixed rate. The testimony offered was for the purpose of charging the estate of the decedent for the rental value of said lots upon the ground that he alone had occupied them. The plaintiff, George G. Dorrance, the decedent, and others were tenants in common of the lot in question, and the ground upon which a tenant in common is liable to be called upon by his cotenant to account in an action of assumpsit for a proportionate share of the money which he has actually received as rent from a stranger is entirely different from that which makes him liable for mere use and occupation. The Act of June 24, 1895, P. L. 237, gave to tenants in common who have been out of possession a right to recover from those who have been in exclusive possession, their proportionate part of the rental value of real estate held in common. Prior to this statute one tenant in common could not maintain either trespass for mesne profits, assumpsit or account render, in order to compel a co-tenant to pay for mere occupation of the premises, without showing either an ouster, or an express promise to account, or to pay something. But prior to the act of 1895 a tenant in common was allowed to recover in assumpsit his share of *185 the profits received by his cotenant from a stranger: Kline v. Jacobs, 68 Pa. 57; Gillis v. McKinney, 6 W. & S. 78; Norris v. Gould, 17 Phila. 318; Enterprise Oil & Gas Co. v. Transit Co., 172 Pa. 421. If the plaintiff intended to recover of the-defendants for mere use and occupation, he should have so averred in his statement, and as he had failed to do that the evidence was properly excluded.
The judgment is affirmed.