## Henderson's Estate

2

Before Van Dusen, Stearne, Sinkler, Klein, and Bok, JJ.

*Joseph Atlas*, of *Schembs & Atlas*, for executrix.

*Joseph P. Gaffney*, for Reba Lawrence and William M. Henderson.

*John J. Cahill*, for Annie Henderson, Robert E. Henderson, Jr., and Edwin S. Henderson.

KLEIN, J., February 11, 1937.—Decedent died in 1933, a widower, leaving six children to survive him. Most of his modest fortune was invested in mortgages. During the last years of his life he dealt with these mortgages in a most irregular manner. The present controversy is but part of extensive litigation instituted by the children in an attempt to unscramble his unorthodox dealings.

We shall first deal with the exceptions filed on behalf of accountant, and in the order in which the questions they raise are discussed in the adjudication.

These exceptions are all improperly drawn. Exceptions should set forth clearly, not only the alleged error of the auditing judge in making his awards, but also his alleged error in not making the awards which exceptants claim he should have made: Farrell's Estate, 1 D. & C. 128 (1921). Accountant's exceptions do neither. We have, however, overlooked this irregularity in order to expedite these proceedings. We assume, after reading the exceptions and counsel's brief, that no objection is made to

the award with respect to the mortgage of $3,000 secured on 2000 North Marvine Street. We therefore refrain from discussing this award, except to state that we are in accord with the auditing judge's conclusion.

William M. Henderson, also referred to as Melvin Henderson, one of decedent's sons, entered a claim for $3,000 with interest arising from a mortgage in that amount secured upon 1412 Dickinson Street, Philadelphia. On April 15, 1920, decedent recorded an assignment of this mortgage to his son. On September 14, 1926, he signed his son's name in satisfaction of this mortgage on the margin of the mortgage book in the recorder of deeds' office and appropriated the proceeds to his own use. There is nothing in the record to indicate that the son had any knowledge of any part of this transaction in decedent's lifetime. The learned auditing judge awarded the son $3,000 with interest from the date of decedent's death, upon the theory that a relationship of life tenant and remainderman existed between decedent and this son. Although we agree with the auditing judge's conclusion, we are not in accord with the theory upon which he made the award.

Henderson et al. v. Hughes, 320 Pa. 124, recently decided by the Supreme Court, arose from similar transactions involving this decedent and other of his children. The court, in that case, ruled that the recording of an assignment of mortgage constituted a valid gift inter vivos and passed title to the donee. Therefore, the recording of the assignment of the mortgage in question passed title to the mortgage to claimant and divested decedent of all dominion over it. When he signed his son's name to the satisfaction of the mortgage in 1926 and appropriated the proceeds, he was guilty of an unlawful misappropriation. The question to be determined by us now is whether the son's claim is barred by the statute of limitations.

The law is well settled that for a trust to be free from the operation of the statute it must be: (1) Direct and continuing; (2) exclusively cognizable in equity; (3)

arising between trustee and cestui que trust: Yorks' Appeal, 110 Pa. 69, 79 (1885).

In Finney v. Cochran, 1 W. & S. 112, 118 (1841), our Supreme Court ruled that trusts arising from the misapplication of funds are within the provisions of the statute of limitations. The court said:

"No doubt the defendant was a trustee, and as such received the moneys upon the bonds which were committed to his charge by the plaintiff. The receipts given by the defendant for the bonds, upon which he received the moneys afterwards, show clearly that the trust was express and direct. Every person who receives money to be paid to another, or to be applied to a particular purpose, to which he does not apply it, is a trustee, and may be sued, either at law, for money had and received, or in equity, as a trustee for a breach of trust. . . . The word 'trust' is frequently used in a very comprehensive sense; and to hold that the statute of limitations is not applicable to any cases which may, even with propriety, be denominated cases of trust, would, in a great measure, defeat, as I apprehend, the plain and manifest intention of the legislature. . . . The trust in the present case was clearly cognizable at law; and for a breach of it, the plaintiff might, at any time, have maintained an action at law, in order to be redressed, if he had not delayed so long as to let the statute interpose a bar to his doing so."

Hostetter v. Hollinger, 117 Pa. 606 (1888), and Dorrance v. Ryon, 35 Pa. Superior Ct. 180 (1908), are to the same effect.

Since claimant clearly had the right to institute proceedings at law to recover the money taken by his father, his claim would be barred by the statute of limitations unless the concealment by the father takes the transaction out of the operation of the act.

The cases dealing with the effect of concealment upon the operation of the statute of limitations were carefully reviewed in the recent decision of Deemer et al. v. Weaver,

Executrix, 324 Pa. 85 (1936). Mr. Justice Barnes, speaking for the Supreme Court, said at page 88:

"The fundamental principle stated in *Smith v. Blachley* [198 Pa. 173, 175], is that 'in cases of fraud the statute runs only from discovery, or from when with reasonable diligence there ought to have been discovery.' If by any act of concealment or deceit, whether before, or at the same time or after the act is committed, the wrongdoer hides from the innocent party the facts which would put him upon inquiry, the statute does not begin to run: *Lewey v. Fricke Coke Co.*, 166 Pa. 536; *Hall v. Penna. R. R. Co.*, 257 Pa. 54; *Schwab v. Cornell*, 306 Pa. 536; *Cloyd v. Reynolds*, 44 Pa. Superior Ct. 81; *Kalin v. Wehrle*, 36 Pa. Superior Ct. 305. In *Schwab v. Cornell*, supra, at p. 539, Mr. Justice Schaffer stated the principle applicable in cases of this kind, 'If the circumstances are such that a man's eyes should have been open to what is occurring, then the statute begins to run from the time when he could have seen, but if by concealment, through fraud or otherwise, a screen has been erected by his adversary which effectually obscures the view of what has happened, the statute remains quiescent until actual knowledge arises.' "

In the present case, the act of decedent in forging his son's name to the satisfaction of the mortgage completely and effectively hid from him the facts which would have put him on notice. There is nothing in the circumstances which would have given the son cause for inquiry. He is therefore not chargeable with what an investigation would have disclosed.

The award of the auditing judge in allowing this claim for $3,000 was therefore proper. There is considerable doubt as to the date from which interest should begin to run. However, no exceptions were taken by claimant to the award which allows interest from date of decedent's death. It will therefore be so awarded.

A different situation exists, however, with respect to this son's claim for $2,500 arising from the mortgage

on 709 Andrews Avenue, Collingdale, Pa. Decedent recorded an assignment of this mortgage to another son, Howard M. Henderson, on October 7, 1918. This son died November 27, 1921. By assignment dated December 29, 1922, more than a year after his death, this mortgage was transferred to William M. Henderson, claimant. It seems obvious that this assignment was forged and therefore void, and that claimant's title thereto is defective. This, however, is of no importance, because of subsequent events. On September 19, 1925, claimant personally executed a power of attorney to have this mortgage satisfied. The mortgage was immediately satisfied and a check in payment thereof was issued by the trust company making the settlement, to the order of claimant. The proceeds of this check were appropriated by decedent.

Since claimant had knowledge of the mortgage and participated in its satisfaction, he is barred by the statute of limitations from now pressing his claim. The trust which resulted from the father's conduct was not one that was "exclusively cognizable in equity". An action at law could have been brought by the son to recover the proceeds of the check. Having had actual knowledge of the payment of the mortgage, he would, by being reasonably diligent, have discovered the whole situation. The claim upon this mortgage is therefore dismissed and the exceptions which relate to this award sustained.

A somewhat similar situation exists with respect to the claim of decedent's daughter, Reba Lawrence, for $3,000 arising from a mortgage on 525 North Sixty-third Street, Philadelphia. An assignment of this mortgage was made by decedent to the daughter on April 15, 1920. On April 23, 1927, she personally satisfied the mortgage. A check in payment of the mortgage was issued by the trust company directly to decedent, and he appropriated the proceeds to his own use. For the reasons already set forth, we conclude that, having actually satisfied the mortgage herself, she is charged with knowledge of the whole transaction, because a diligent inquiry would have readily dis-

closed the entire situation. Her claim is therefore barred by the statute of limitations. The exceptions relating to this award are therefore sustained and the claim dismissed.

Exceptions were also filed on behalf of Annie Henderson, Robert E. Henderson, Jr., and Edwin S. Henderson, children of decedent, to the dismissal of their claims for interest collected by decedent on four mortgages which he assigned of record to them in his lifetime.

After decedent's death, claimants' sister, Rachel Hughes, the executrix, took possession of the mortgage papers and collected interest from the mortgagors. Exceptants instituted equity proceedings in the Court of Common Pleas No. 3 of Philadelphia County, as of March term, 1934, no. 2899, against Rachel Hughes in her individual capacity, for the delivery of the mortgage papers and an accounting of the interest collected by her. Their claims were upheld by the common pleas court and affirmed, on appeal, by the Supreme Court.

At the audit of the executrix's account, claim was made for the interest collected on these mortgages by the decedent after the assignments of mortgages were entered of record. The learned auditing judge properly dismissed the claim. The method in which the assignments were made by decedent indicates that he reserved to himself the income from the mortgages for his life and that the children's right to the income was postponed until his death. But even if this were not so, the judgment of the common pleas court precludes claimants from presenting their claims at this time.

Chief Justice Kephart fully discussed the doctrine of res adjudicata in Hochman v. Mortgage Finance Corp. et al., 289 Pa. 260, 263 (1927). He said:

"It is a general principle of public policy, making for the general welfare, for the certainty of individual rights, and for the dignity and respect of judicial proceedings, that the doctrine of res adjudicata should be supported, maintained and applied in proper cases. Nor should its

application be restricted by technical requirements, but a broad view should be taken of the subject, having always in mind the actual purpose to be attained . . . nor should the parties, by a shuffling of plaintiffs on the record or by change in the character of the relief sought, be permitted to nullify the rule. . . . The requirements for application of the rule are that there be an identity of parties and of subject-matter in the two actions. The first of these requirements being present, all issues that were actually adjudicated in the former action are concluded (Bower's Est., 240 Pa. 388; First Nat. Bank of Wrightsville v. Dissinger, 266 Pa. 349) ; and if the whole cause of action in the second case is the same as in the first, not only the issues actually adjudicated in the first proceeding, but also those which might have been raised and passed upon are concluded. If, then, the issues in the present case could have entered into the determination of the first case, they should have been presented; and if they were omitted for any cause, the judgment or decree entered thereon is conclusive between the parties or their privies. See Morrett v. Fire Assn., 265 Pa. 9, 12 and 13."

See also Wallace's Estate, 316 Pa. 148 (1934).

Both of the requirements for the application of the rule are present in the instant case. There is an identity of parties and the present claims could have been presented in the prior equity proceedings.

We agree with the learned auditing judge that the fact that Rachel Hughes was not named as executrix is immaterial. She was, in fact, sued in her representative capacity. Although the equity proceedings named her individually, claimants certainly knew that she was executrix of their father's estate. They attached to their bill of complaint a copy of his will which named her executrix. The very nature of the proceedings necessitated a defense by her as executrix, as she clearly had no direct interest in the mortgages as an individual. If her contention had been upheld, the mortgages and the interest she collected would have become part of this estate.

The legal effect of the recording of the assignments of mortgages by decedent was the question of controversy in the equity suit. This involved not only title to the mortgages, but also the right to the income from the date of assignment. The courts of common pleas have concurrent jurisdiction with the orphans' court in determining claims against a decedent's estate: Phillips, Admr., v. The Allegheny Valley R. R. Co., 107 Pa. 465. (1884) ; Schmidt's Estate, 16 Pa. C. C. 299 (1895). Therefore claimants, having filed the bill in equity, should have proceeded to have all their rights adjudicated at one time. This is especially true because of the well-recognized principle of equity that once it takes cognizance of litigation it will dispose of every subject embraced within the circle of contest in order to avoid a multiplicity of suits: Gwinn et al. v. Lee et al., 6 Pa. Superior Ct. 646 (1898).

Claimants cannot have their rights litigated piecemeal. The doctrine of res adjudicata applies and they are accordingly precluded. Their exceptions are therefore dismissed and the adjudication, except as modified by this opinion, is confirmed absolutely.