Schwab, Appellant, *v.* Cornell.

Argued January 18, 1932. Before FRAZER, C. J., SIMPSON, KEPHART, SCHAFFER, MAXEY and DREW, JJ.

*G. Herbert Jenkins,* with him *Joseph G. Lester,* for appellant.—Defendant's obligation continued after the date of passing title and expiration of the redemption period: Moore v. Juvenal, 92 Pa. 484; Mark v. Osmer, 138 Pa. 1; Taylor v. Hammel, 201 Pa. 546; Guarantee Trust Co. v. Bank, 202 Pa. 94; Mitchell v. Buffington, 10 W. N. C. 361; Wickersham v. Lee, 83 Pa. 416; Morgan v. Tener, 83 Pa. 305; Andriessen's App., 123 Pa. 303; Smith v. Blachley, 198 Pa. 173.

Defendant's continued concealment and misrepresentation tolled the running of the statute of limitations until plaintiff's discovery of his loss: Lewey v. Fricke Coke Co., 166 Pa. 536.

*Julian W. Barnard,* with him *Charles Townley Larzalere,* of *Larzelere & Wright,* for appellee.—Unless there is something in the relation of the parties, or the conduct of the defendant, to toll it, the statute of limitations begins to run when the cause of action arises, which, in the case at bar, was more than six years prior to the bringing of the suit: Owen v. Saving Fund, 97 Pa. 47, 54; Lehigh C. & N. Co. v. Blakeslee, 189 Pa. 13; Com. Title, etc., v. Folz, 23 Pa. Superior Ct. 558; Noonan v. Pardee, 200 Pa. 474; Taylor v. Hammell, 201 Pa. 546; Stucker v. Shumaker, 290 Pa. 348.

The statute of limitations began to run in this case upon the happening of the negligence, or breach of duty, irrespective of when the resultant damage to plaintiff may have accrued and irrespective of when plaintiff may have learned of the situation.

There was no evidence of such continued fraud or concealment as would toll the running of the statute: Smith v. Blachley, 198 Pa. 173.

OPINION BY MR. JUSTICE SCHAFFER, March 14, 1932:

Plaintiff employed defendant, a conveyancer, to act in his behalf in the consummation of the purchase of two building lots. The duty of defendant was to prepare the deed for the properties, to see that plaintiff obtained a clear title, and to procure a policy of title insurance guaranteeing good title, clear of encumbrances, or inform plaintiff of any exceptions. When the settlement sheet of the title company was delivered to defendant, it showed unpaid taxes of twenty cents on each lot for the year 1922 and required the production of certain tax receipts. In the title policy issued these taxes were not insured against. Defendant did not inform plaintiff of the existence of the unpaid taxes, but on the contrary, wrote him a letter on June 28, 1923, enclosing the recorded deed for the lots, in which he said: "I am also enclosing you herewith Montgomery Trust Company title policy No. 5966 showing the title to be entirely clear of liens with the exception of certain rights granted the telephone company and the Philadelphia Suburban Gas & Electric Company." Relying upon the assurance contained in this communication, plaintiff rested content until October, 1928, when he received notice that his property (upon which in the meantime he had erected a dwelling), had been sold for the unpaid taxes referred to, and had been purchased by another who threatened to eject him. In order to obtain title from the tax sale purchaser, it became necessary for plaintiff to make certain payments to the tax sale vendee and for other expenses. To obtain reimbursement of these sums plaintiff brought this suit against defendant alleging that he had been negligent in the performance of the service which plaintiff had entrusted to him and for which he had been paid. On the trial the court directed

a verdict for defendant on the ground that the action was barred by the statute of limitations.

The deed to plaintiff is dated February 28, 1923. The letter heretofore mentioned is dated June 28, 1923. The notice from the purchaser at the tax sale was received by plaintiff in October, 1928. The action was brought December 14, 1929, more than six years after the date of the deed and the letter from defendant to plaintiff informing him that the property was clear of liens. The court below decided that the date of the letter, June 28, 1923, was the controlling one so far as the running of the statute of limitations is concerned.

The statute provides that such actions as the present shall be brought "within six years next after the cause of such actions or suit, and not after": Act of March 27, 1713, 1 Smith's Laws 76, 12 P. S. section 31. The cause of the action was defendant's neglect and the sale on the tax lien and the consequent divestiture of plaintiff's title and this did not take place until 1928. If there had been no sale, plaintiff would not have been damaged. It is argued by appellee that the cause of action was defendant's failure to provide for the payment of the taxes; while this might be said to be the starting of the cause, it was a continuing one which did not ripen into a complete cause of action until the sale. But even if the cause of action did arise and was complete at the time of writing the letter, this communication brought about such concealment as tolls the running of the statute. Many cases involving the application of statutes of limitation to varying facts are called to our attention by the attorneys for the parties before us and a full review of them might be of more than passing interest. For the sake of brevity, however, we shall refer to but two of them which we think in principle mark the two lines of distinction in applicability and nonapplicability of the statute of limitations in cases such as this. If the circumstances are such that a man's eyes should have been open to what is occurring, then the statute begins

to run from the time when he could have seen, but if by concealment, through fraud or otherwise, a screen has been erected by his adversary which effectually obscures the view of what has happened, the statute remains quiescent until actual knowledge arises. Thus in Lewey v. Fricke Coke Co., 166 Pa. 536, an action of trespass for the illegal mining of coal, it was held that because defendant, an adjoining operator engaged in mining coal, had entered surreptitiously beneath the surface and removed plaintiff's coal without the latter's knowledge or means of knowledge, the statute did not begin to run until the plaintiff knew of the trespass. Contrariwise in Noonan v. Pardee, 200 Pa. 474, where the plaintiff was a surface owner and knew that mining operations had been conducted underneath his land and could at any time have investigated their extent and was injured by the subsidence of his surface due to the unlawful removal of supporting pillar coal, we decided that the statute began to run from the time of the removal of the coal, not from the subsidence. In the Fricke Company Case, at page 544, we pointed out that, while mere ignorance will not prevent the running of the statute, "there is no reason, resting on general principles, why ignorance that is the result of the defendant's conduct, and not of the stupidity or negligence of the plaintiff, should not prevent the running of the statute in favor of the wrongdoer." In the instant case, we regard the letter of defendant, in which he informed the plaintiff that his title was "entirely clear of liens," as such an actual misrepresentation of the true situation as prevented the running of the statute until plaintiff discovered by notice of the sale of his property what was the actual situation,—that his title was not clear as defendant represented it to be, but encumbered.

The fact that plaintiff had the title policy in his possession, which showed taxes excepted as a lien against which the title was not insured, does not alter the situation created by defendant's letter which transmitted it

to him; the letter would effectually close plaintiff's eyes to the particular terms of the policy.

The judgment is reversed with a new venire.