393 A.2d 1230

**Julia M. ACKER, Appellant,**

**v.**

**Dr. Peter V. PALENA and Thomas Jefferson University Hospital, Appellees.**

Superior Court of Pennsylvania.

Argued June 12, 1978.

Decided Oct. 20, 1978.

216

Daniel M. Jaffe, Philadelphia, for appellant.

No appearance entered nor brief submitted for appellee, Palena.

Joseph R. Davison, with him Robert F. Rossiter, Philadelphia, for appellee, Thomas Jefferson University Hospital.

Before JACOBS, President Judge, and HOFFMAN, CERCONE, PRICE, VAN der VOORT, SPAETH and HESTER, JJ.

PER CURIAM:

Appellant contends that the lower court erred in granting summary judgment on the grounds that the statute of limitations barred her complaint in trespass. We agree and, therefore, reverse the order of the lower court.

On July 30, 1975, appellant instituted a medical malpractice action against appellees by filing a complaint in trespass in the Philadelphia County Court of Common Pleas. Appellant alleged that on November 14, 1972, as she was working at a grinding wheel at her job, a foreign object from the grinding wheel flew into her left eye. The following day, November 15, 1972, appellant consulted Dr. Palena,[1]

---

1. This appeal is captioned "*Julia M. Acker v. Dr. Peter V. Palena and Thomas Jefferson University Hospital.*" However, an examination of the record demonstrates that only the hospital filed a motion for summary judgment and that the lower court, accordingly, granted the motion only in the hospital's favor. The record does not indicate that Dr. Palena filed any motions at all. Consequently, the lower court did not dispose of appellant's claim against Dr. Palena.

an opthalmologist, for an examination of her injured left eye. The examination revealed a rhegmaginous retinal detachment of that eye; Dr. Palena recommended surgery to correct the condition. Consequently, on November 15, 1972, appellant entered appellee Thomas Jefferson University Hospital as Dr. Palena's patient and remained under his care during the period of her hospitalization.

On November 17, 1972, Dr. Palena performed surgery on appellant's eye in an attempt to correct the detached retina. During the surgery, a rupture in the sclera, or white portion, of appellant's left eye caused a hemorrhage in that eye. The hospital discharged appellant on November 22, 1972; she remained in Dr. Palena's care for several months thereafter. During that time, appellant visited Dr. Palena at his office for examinations. Appellant alleged that she "was at all times advised that the operative procedure had corrected the problem with her eye and that it would just be a matter of time before her vision returned." According to appellant's complaint, Dr. Palena never informed her that the condition of her eye was deteriorating.

In July of 1973, appellant terminated her relationship with Dr. Palena. Shortly thereafter, on August 9, 1973, appellant consulted another opthalmologist, Dr. Kurz, at Hunterdon Medical Center, in Flemington, New Jersey. Dr. Kurz informed appellant that the severely deteriorated condition of her left eye required surgical removal of the eye. On October 18, 1973, Dr. Kurz removed appellant's left eye. In her complaint, appellant also alleged, *inter alia*, that Dr. Palena negligently performed surgery on her left eye on November 17, 1972, and that Thomas Jefferson University Hospital negligently employed Dr. Pelana as its agent. Finally, appellant alleged that she did not become aware of any negligence until August 9, 1973, when she consulted Dr. Kurz who advised her that the condition of her left eye required its removal.

In his new matter in response to appellant's complaint, Dr. Palena asserted that the two year personal injury statute of limitations barred appellant's action. Appellee

Thomas Jefferson University Hospital filed a motion for summary judgment in which it denied the existence of an agency relationship with Dr. Palena and also asserted the bar of the statute of limitations. Specifically, appellees maintained that because the statute of limitations began to run from the time of appellant's alleged injury during the operation on November 17, 1972, the statute of limitations precluded appellant's complaint filed on July 30, 1975, more than two years after the injury. Neither appellees nor appellant filed any depositions of record.[2] The lower court agreed and granted appellee hospital's motion for summary judgment on February 15, 1977.[3] This appeal followed.

Appellant contends that the lower court erred in holding that the statute of limitations began to run when appellant allegedly sustained injury during the course of surgery on November 17, 1972, and thus barred her complaint of July 30, 1975. Consequently, appellant maintains that the lower court improperly entered summary judgment in favor of Thomas Jefferson University Hospital. We agree.

The law on summary judgment is well-settled. "Summary judgment is made available by Pa.R.C.P. 1035, 12 P.S. Appendix, when the pleadings, depositions, answers to interrogatories, admissions on file and supporting affidavits considered together reveal no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. This severe disposition should only be granted in cases where the right is clear and free from doubt. To determine the absence of a genuine issue of fact, the court must take the view of the evidence most favorable to the

2. In their briefs, both appellant and appellees refer to depositions of appellant and Dr. Palena. Because the parties never entered the alleged depositions into the record, we cannot consider them in any way. *Cercone v. Cercone*, 254 Pa.Super. 381, 386 A.2d 1 n.1 (1978).

3. In its opinion in support of summary judgment, the lower court stated that it granted appellee's motion based solely on the expiration of the statute of limitations and that it reached no determination regarding an agency relationship between Dr. Palena and Thomas Jefferson University Hospital. Because of our disposition, we similarly find it unnecessary to reach the agency issue.

non-moving party, and any doubts must be resolved against the entry of the judgment." (citations omitted). *Husak v. Berkel, Inc.*, 234 Pa.Super. 452, 458, 341 A.2d 174, 177 (1975). *See also, Amabile v. Auto Kleen Car Wash*, 249 Pa.Super. 240, 376 A.2d 247 (1977); *Bowman v. Sears, Roebuck & Co.*, 245 Pa.Super. 530, 369 A.2d 754 (1976). The moving party bears the burden of demonstrating clearly that there is no genuine issue of material fact. *LeGrand v. Lincoln Lines, Inc.*, 253 Pa.Super. 19, 384 A.2d 955 (1978). *See also, Prince v. Pavoni*, 225 Pa.Super. 286, 302 A.2d 452 (1973); *Schacter v. Albert*, 212 Pa.Super. 58, 239 A.2d 841 (1968).

In the instant case, the lower court granted appellee's motion for summary judgment because it found that the statute of limitations barred appellant's complaint. Specifically, the court held that the statute of limitations began to run when appellant underwent surgery on November 17, 1972, thereby precluding her complaint of July 30, 1975. We disagree.

The applicable statute of limitations for a personal injury action provides as follows:

"Every suit hereafter brought to recover damages for injury wrongfully done to the person, in case where the injury does not result in death, must be brought within two years from the time when the injury was done and not afterwards; in cases where the injury does result in death the limitation of action shall remain as now established by law." [4]

Pennsylvania courts have repeatedly construed this statute of limitations as commencing to run from the time plaintiff discovered or should reasonably have discovered the cause of harm or injury. In *Ayers v. Morgan*, 397 Pa. 282, 289–90, 154 A.2d 788, 792 (1959), our Supreme Court held that the two year personal injury statute of limitations did not bar plaintiff's malpractice claim nine years after an operation during which defendant-physician left a sponge in plaintiff's body:

4. Act of June 24, 1895, P.L. 236, § 2; 12 P.S. § 34.

"Both the defendant and the lower Court have apparently misevaluated the specific wording of the [statute of limitations]. It seems they regard the crucial words as reading: 'Every suit . . . must be brought within two years from the time *the act was committed*.' The statute, however, says that the suit must be 'brought within two years from the time *when the injury was done*.' The injury is done when the act heralding a possible tort inflicts a damage which is physically objective and ascertainable." (emphasis in the original). In *Prince v. Trustees of the University of Pennsylvania*, 282 F.Supp. 832, 840 (E.D.Pa.1968), the court elaborated on Pennsylvania law:

"In effect, the Pennsylvania 'discovery' rule delays the accrual of the cause of action from the time of the defendant's negligent conduct to a time when the injury caused by that conduct becomes known or knowable. It is, obviously, a rule intended to benefit the plaintiff. The fairness of the rule has been praised:

'Avoidance of the injustice which might result where the injury  *  *  *  is "inherently unknowable" at the time of the defendant's conduct would seem of greater moment that the desirability of respose (sic) and administrative expediency  *  *  *  [t]he burden on the courts probably would not be unduly increased, for the number of "inherently unknowable" injuries would necessarily be small.' Developments in the Law: Statutes of Limitations, 63 Harv.L.Rev. 1177, 1204–5 (1950).

"The rule has been approved by other courts. *See, e. g., Urie v. Thompson*, 337 U.S. 163, 69 S.Ct. 1018, 93 L.Ed. 1282 (1949) (silicosis); *Johnson v. Caldwell*, 371 Mich. 368, 123 N.W.2d 785, 791 (1963) ('The trend  *  *  *  has been toward  *  *  *  the "discovery rule" '); *Agnew v. Larson*, 82 Cal.App.2d 176, 185 P.2d 851 (1947)." Thus, "until one discovers, or through reasonable diligence should discover, the misdiagnosis or improper procedure used by the physician, he does not have reason to know that he has been injured . . ." *Huber v. McElwee—Courbis Constr'n Co.*, 392 F.Supp. 1379, 1383 (E.D.Pa.1974). Consequently,

the statute of limitations will be tolled and the personal injury cause of action will not arise until the time of discovery. *Huber, supra. See also Prince, supra; Daniels v. Beryllium Corp.*, 227 F.Supp. 591 (E.D.Pa.1964); *Ayers, supra.*

*Barshady v. Schlosser*, 226 Pa.Super. 260, 313 A.2d 296 (1973) presented a factual pattern similar to the instant case. In *Barshady, supra*, plaintiff had surgery to correct a hearing loss. Immediately thereafter, plaintiff suffered severe pain, a raw tongue and numbness of the face and tongue. When she complained of these symptoms to defendant-physician, he assured her that her condition was temporary. Consequently, plaintiff continued under defendant's care for a period of almost two years. At this point, she consulted another physician and learned, for the first time, that she had sustained damage to the tympanic nerve. Plaintiff subsequently instituted a trespass suit against defendant. The trial court granted defendant's motion for a non-suit based on its finding that the statute of limitations period had expired by the time plaintiff filed her complaint. Because the vote of our Court was equally divided, we affirmed the lower court's order, without an opinion. However, the opinion of HOFFMAN, J., in support of reversal, is instructive in analyzing Pennsylvania's rationale for tolling the statute of limitations until such time as a reasonable person could have discovered the injury:

"Despite the seemingly mandatory nature of [12 P.S. § 34] certain exceptions to the rule have evolved as part of our case law. As the Supreme Court of Pennsylvania said in *Walters v. Ditzler*, 424 Pa. 445, 449, 227 A.2d 833 (1967):

'Presently pertinent are certain well settled legal principles: (a) mere mistake, misunderstanding or lack of knowledge do not toll the running of the statute of limitations . . .; (b) if, through fraud, deception or concealment of facts, . . . [a defendant] lulls an injured person or his representatives into a sense of security so that such person's vigilance is relaxed, then [the defendant] is estopped from evoking the statute . . .; (c) the fraud which will toll

the statute and effect an estoppel need not be fraud in the strictest sense, i. e., inclusive of an intent to deceive, but may be fraud in the broad sense, i. e., inclusive of an unintentional deception: *Nesbitt v. Erie Coach Co.*, 416 Pa. 89, 96, 204 A.2d 473 (1964); *Schwab v. Cornell*, 306 Pa. 536, 160 A. 449 (1932) . . .'

"Even where no fraud or concealment of facts may be proven, the law permits a party to bring a cause of action after the statutory period of limitations has passed where the existence of the injury is not known and where such knowledge cannot be reasonably ascertained. . . .

". . . [T]he earliest the statute of limitations can be said to run is March of 1963. The appellant confronted her surgeon with her symptoms and ailments immediately after the operation. Having absolute confidence in the judgment of her physician, as is the case in many physician-patient relationships, she believed the appellee's statement that the pain was an emotional reaction to surgery and the numbness would be temporary. So confident was she, that despite the ongoing nature of her symptoms appellant continued her treatments with the appellee until March, 1963. We believe that appellant's delay in seeking other medical advice was a reasonable one, prompted by her faith in her physician. While the concealment of the cause of her symptoms cannot be said to rise to 'fraud' or 'deception,' we hold that the assurances of the physician lulling his patient into a false sense of security acted as 'concealment,' thereby tolling the statute until March, 1963. Our computation is justified further by the continuous course of treatment followed by the appellant with the appellee surgeon from the date of surgery until March, 1963. See, *Plazak v. Allegheny Steel Corp.*, 324 Pa. 422, 188 A. 130 (1936).

"The second exception is likewise applicable to the instant case. Appellant contends that the damage to the chorda tympani nerve was not ascertainable until after discontinuing her treatments with Dr. Schlosser. It was not until Dr. Pegues determined by physical examination that there was loss of taste on the left side of appellant's tongue. It was

pointed out at trial that such loss of sensation and 'numbness' were not physical signs readily experienced or discovered without medical examination. During the two years following surgery, the appellant who had been under the continuous treatment of the appellee could not reasonably have been expected to ascertain the cause of her symptomology. Instead, she could only conclude, based on the appellee's assurances, that her maladies were temporary and would disappear with time.

"While the appellant was symptomatic since 1961, and while physical examination would have determined the extent of injury as early as 1961, to compute the running of the statute of limitations from that date simply is not the law. Because of appellant's reasonable reliance on appellee's representations, we conclude that the statute was tolled until March, 1963, at which time appellant was first able to ascertain the *cause* of her injury. *Ayers v. Morgan*, supra. In our opinion that was the crucial factor. Logic and judicial fairness compel no other result." *Barshady, supra*, 226 Pa.Super. at 262–65, 313 A.2d at 298.

In the instant case, appellant's complaint alleged that she was "at all times advised that operative procedures had corrected the problem with her eye and that it would be a matter of time before her vision was restored." Consequently, appellant maintains that she neither knew of nor could have discovered the injury allegedly sustained during the November 17, 1972 surgery until Dr. Kurz informed her of the permanence of the damage on August 9, 1973. Moreover, appellee's answers and appellee's motion for summary judgment do not assert that Dr. Palena ever informed appellant of the nature or permanence of her injury.

Construing the pleadings, as we must, in the light most favorable to appellant as the non-moving party, *Husak, supra; Amabile, supra; Bowman, supra*, we conclude that Dr. Palena gave appellant no information which would have provided reason for her to believe that her visual loss was permanent or that she had sustained any injury during surgery. Appellant, under Palena's care until July, 1973,

could not reasonably have been expected to ascertain on her own, the cause of the deterioration of her eye. Instead, she could only conclude, based on Dr. Palena's alleged assurances, that her vision would return. Thus, it was not until August 9, 1973, when Dr. Kurz informed appellant that he would have to remove her eye that appellant discovered the injury.

Because we conclude that appellant's non-discovery of the cause of her injury until August 9, 1973 was reasonable, we hold that the statute of limitations was tolled and appellant's cause of action did not begin until that date. Accordingly, appellant's complaint filed on July 30, 1975 was within the statutory period, and the lower court erroneously granted appellee's motion for summary judgment.[5]

Order reversed and case remanded for further proceedings.

PRICE, J., files a dissenting statement, in which JACOBS, President Judge, joins.

HOFFMAN, J., did not participate in the consideration or decision of this case.

PRICE, Judge, dissenting.

The majority has adopted without qualification the "discovery" rule in applying the applicable statute of limitations. In so doing they have stretched the somewhat elastic rule of law heretofore applicable in Pennsylvania. Whether this stretching is beyond the breaking point of the elastic or not is, I suppose, ultimately for our Supreme Court. For now, however, I must dissent for to my view the elastic snapped early in my reading of the majority opinion.

Accepting for the purpose of this appeal fraud and concealment, active or passive, on the part of appellees and reasonable diligence or the inherently unknowable nature of

---

5. Appellant also contends that the lower court erred in not finding that the statute of limitations tolled until August 9, 1973 because the hospital and Dr. Palena actively and fraudulently concealed their negligence. Because of our disposition of the instant case, it is unnecessary for us to reach this contention.

the injury for the appellant, the fact remains, uncontroverted, that appellant discovered the injury on August 9, 1973, a period of 15 months prior to the November 16, 1974 run date of the statute. The removal of the eye was some 13 months prior to the run date of the statute. I find no case in Pennsylvania that extends the statute under such circumstances. My reading convinces me that the present law of Pennsylvania permits extension of the statute only if the injury could not be discovered by reasonable diligence within the time period, or fraud and concealment covered the injury during the time period.

If sympathy was the rule of law I would happily accept the majority view. It is not the law, however, and I must dissent.

I would affirm the order granting summary judgment.

JACOBS, President Judge, joins in this dissenting statement.