## Swasing v. Leis

*H. John Witman, III*, for plaintiffs.

*Francis E. Marshall, Arthur M. Toensmeier, J. Paul Erwin, Jr.*, and *J. Grant McCabe, III*, for defendants.

FRANKSTON, *Administrator*, May 28, 1980— On July 6, 1979, plaintiffs, Elsie and Henry Swasing, filed a notice complaint against Drs. Leis, Zal and Randall, the Delaware Valley Medical Center

(D.V.M.C.) and the Hospital of the Philadelphia College of Osteopathic Medicine (P.C.O.M.) alleging their negligent treatment of wife-plaintiff during the period of June, 1976 to April 15, 1977. On March 13, 1980, defendants Leis and D.V.M.C. filed a motion for summary judgment and a memorandum of law on the basis that plaintiffs did not institute their action until more than two years after their cause of action accrued. By order dated March 25, 1980, we established a schedule for the submission of briefs, affidavits and documents.

## FACTS

The following facts are elicited from Mrs. Swasing's deposition filed on March 13, 1980. Dr. Leis first saw her as a patient in early June, 1976 to examine a surgical wound which was not properly healing. He admitted her to D.V.M.C. later that month where he performed an operation to attempt to resolve the problem. Sometime after she was discharged, she believed the condition to be "getting worse." Dr. Leis then readmitted her to D.V.M.C. in November, 1976, whereupon he performed another surgical procedure. Although seemingly cured after this discharge, Mrs. Swasing's condition deteriorated in late December, 1976-early January, 1977. Dr. Leis then admitted her into P.C.O.M. in February, 1977 for this condition. She was discharged in April, 1977 with her condition looking the same as when she entered; her wound was just not healing. Mrs. Swasing thereafter went to a new doctor in June, 1977 without further consulting with Dr. Leis. She last saw Dr. Leis when he discharged her on April 15, 1977. It appears that her last contact with D.V.M.C. was in November, 1976.

During her deposition, Mrs. Swasing testified that she knew that during her period of hospitalization from February, 1977 through April 15, 1977, her condition was not improving and was getting worse as compared to her April, 1976 condition. She formed the opinion that her condition was due to the treatment that Dr. Leis was giving her and that Dr. Leis had, in fact, committed malpractice during the period of her P.C.O.M. hospitalization from February, 1977 to April 15, 1977. "I felt it [that Dr. Leis's treatment was improper] towards the end [of her stay at P.C.O.M.]." "I personally felt that he wasn't doing right . . . when he put me in Philadelphia Hospital [sic P.C.O.M. in February, 1977]."

## DISCUSSION

Pennsylvania law provides that an action for personal injuries must be brought within two years from the time when the injury was done: Act of June 24, 1895, P.L. 236, sec. 2, 12 P.S. §34 (repealed by Act of April 28, 1978, P.L. 202, sec. 2(a) [807], now provided by 42 Pa.C.S.A. §5524(2)). "Pennsylvania courts have repeatedly construed this statute of limitations as commencing to run from the time plaintiff discovered or should reasonably have discovered the cause of harm or injury." Acker v. Palena, 260 Pa. Superior Ct. 214, 219, 393 A. 2d 1230, 1232 (1978). See Bayless v. Philadelphia Phillies National League Club, 579 F. 2d 37 (3d Cir. 1978). This standard involves a two-part test: plaintiff must know or reasonably know not only of the existence of the injury, but also *that defendant's conduct was the cause of injury*: Armacost v. Winters, 258 Pa. Superior Ct. 424, 392 A. 2d 866 (1978); Greenberg v. McCabe, 453 F. Supp. 765 (E.D. Pa. 1978). "In effect, the Penn-

sylvania 'discovery' rule delays the accrual of the cause of action from the time of the defendant's negligent conduct to a time when the injury caused by that conduct becomes *known or knowable*. It is, obviously, a rule intended to benefit the plaintiff." Acker, supra, at 220. (Emphasis supplied.)

In the instant case the statute of limitations cannot be construed to begin to run any later than April 15, 1977. Mrs. Swasing testified that by April 15, 1977, she was completely aware that her condition was still unstable in that the surgical wound had clearly not healed properly. By April 15, 1977, she also had formed an opinion that Dr. Leis had used improper treatment upon her, making her condition unstable, and that this treatment amounted to malpractice. "I felt it [that Dr. Leis' treatment was improper] towards the end [of her stay at P.C.O.M. in April, 1977]." "I personally felt that he was not doing right . . . when he put me in Philadelphia Hospital [sic P.C.O.M. in February, 1977]." In our opinion, plaintiff clearly ascertained both the existence of her condition and the likely cause of that condition no later than April 15, 1977. Since the action was not initiated until July 6, 1979, it is barred by the running of the statute of limitations.

Once Mrs. Swasing knew of her condition and its likely cause, the statute began to run. It does not matter for the running of the statute that she knew or should have known that defendant's conduct was, in fact, "negligent" or "culpable" since she maintains that she knew Dr. Leis' treatment was improper and amounted to malpractice since April 15, 1977: Armacost, supra; Ayers v. Morgan, 397 Pa. 282, 290, 154 A. 2d 788 (1959) (statute begins to run from the time when the "injury is done," i.e., "when the act heralding a possible tort inflicts a

damage which is physically objective and ascertainable."). But see Carney v. Barnett, 278 F. Supp. 572 (E.D. Pa. 1967) (statute begins to run from the time when plaintiff, in the exercise of reasonable diligence, could have ascertained the defendant's "culpability"); Gemignani v. Philadelphia Phillies National League Club, 287 F. Supp. 465, 467 (E.D. Pa. 1967) (statute begins to run from the time when plaintiff has "reason to know a *claim* exists."). (Emphasis in original.)

In Armacost, supra, the minor plaintiff was injured in an auto accident in May, 1970 and immediately complained of frequent headaches for which he was subsequently treated. Plaintiff did not file suit until more than three years later, claiming that he did not know of the cause of the headaches until then. The court found that the statute of limitations barred the action. "The injury was fully known at the time of the accident, and its cause should have been known, by a reasonable mind." 258 Pa. Superior Ct. at 428, 392 A. 2d at 868; Huber v. McElwee-Courbis Constuction Co., 392 F. Supp. 1379 (E.D. Pa. 1974). Plaintiff need not know that the facts surrounding the incident created a legally protected right to sue: Getz v. Bruch, 400 F. Supp. 1033 (E.D. Pa. 1975). Simply stated, the statute begins to run once plaintiff knows of her condition and its *probable* cause.

Moreover, the instant factual situation is not one where the treating physician's assurances of recovery lulled the patient into a false sense of security whereby plaintiff was unable to discover the "malpractice" until he or she later received other professional medical advice: Acker, supra; Barshady v. Schlosser, 226 Pa. Superior Ct. 260, 313 A. 2d 296 (1973); Schaffer v. Larzalere, 410 Pa.

402, 189 A. 2d 267 (1963). During Mrs. Swasing's admission to P.C.O.M. in February, 1977, Dr. Leis accused her of intentionally opening up her wound to retard the healing process, an accusation she vehemently denied. It was during this admission that Mrs. Swasing voluntarily admitted herself into the psychiatric ward of P.C.O.M. to prove to her physician that she was not psychotic and was not intentionally opening the surgical wound. Certainly, at this time, Mrs. Swasing should have harbored serious doubts as to the propriety of Dr. Leis' treatment.

In plaintiff's brief, it was suggested that the statute should not begin to run until a different surgical procedure was successful in curing Mrs. Swasing's condition. We cannot agree. Such a proposition could render the statute of limitations meaningless and ineffectual. If plaintiff chose not to undergo such an operation or if such a surgical procedure was nonexistent, the statute of limitations could never begin to run.

A writer has suggested that the statute should not begin to run until plaintiff has, through professional medical advice, discovered the *negligence* of the "malpracticing" physician. In situations other than those discussed immediately above, we believe that this approach confuses the burden of proof concept with the underlying policy of the statute of limitations. While most medical malpractice suits must be supported by expert medical testimony to be considered by a jury, Lambert v. Soltis, 422 Pa. 304, 221 A. 2d 173 (1966), we do not believe that this concept has any relevance to the institution of suit within the prescribed time limitations. Practically speaking, it is usually long after a suit has been filed that a plaintiff acquires the expert

report upon which he will rely at trial to satisfy his or her burden of proof. The statute of limitations period and the post-filing period (should plaintiff choose to institute suit first) can be used to investigate the existence of negligence and gather the proof necessary to prevail at trial. However, whether or not plaintiff obtains sufficient evidence to carry the burden of proof imposed upon him has nothing to do with tolling the statute of limitations. The underlying basis of the statute of limitations is no mere technical tool to keep plaintiffs from having their day in court. Rather the rationale has been stated as follows:

" 'The defense of the statute of limitations is not a technical defense but substantial and meritorious. . . . Such statutes are not only statutes of repose, but they supply the place of evidence lost or impaired by lapse of time, by raising a presumption, which renders proof unnecessary. . . . "Statutes of limitations are vital to the welfare of society and are favored in the law. They are found and approved in all systems of enlightened jurisprudence. They promote repose by giving security and stability to human affairs. An important public policy lies at their foundation. They stimulate to activity and punish negligence. While time is constantly destroying the evidence of rights, they supply its place by a presumption which renders proof unnecessary. Mere delay, extended to the limit prescribed, is itself a conclusive bar. The bane and antidote go together." ' " Schmucker v. Naugle, 426 Pa. 203, 205-206, 231 A. 2d 121, 123 (1967) (quoting United States v. Oregon Lumber Co., 260 U.S. 290, 299-300 (1922)).

The argument of defendant D.V.M.C. for sum-

mary judgment against plaintiffs is even more compelling than Dr. Leis' argument. Mrs. Swasing's last contact with the D.V.M.C. was in November, 1976. She never returned to that medical center. It is obvious that she knew of her condition since she continued to have it treated. And if she claims not to have known the cause of her condition during her stay at D.V.M.C., certainly she knew the cause of her condition as of April, 1977, more than two years before the filing of this claim.

We therefore enter the following

## ORDER

And now, May 28, 1980, upon consideration of the motion for ssmmary judgment, filed by defendants Leis and Delaware Valley Medical Center on March 13, 1980, our order dated March 25, 1980, plaintiff's memorandum of law in opposition to defendants' motion, filed on April 15, 1980, and this opinion, it is hereby ordered and decreed that summary judgment is entered in favor of defendants Leis and Delaware Malley Medical Center and ageinst plaintiffs.