423 A.2d 1047

**Cheryl WALLACE, Appellant,**

**v.**

**Ronald HORVATH, M. D. and Chestnut Hill Hospital.**

Superior Court of Pennsylvania.

Argued March 13, 1980.

Filed Dec. 29, 1980.

Petition for Allowance of Appeal Denied April 10, 1981.

Francis T. McDevitt, Philadelphia, for appellant.

David E. Faust, Philadelphia, for appellees.

Before BROSKY, HOFFMAN and VAN der VOORT, JJ.

HOFFMAN, Judge:

Appellant contends that the lower court erred in granting appellees' motion for summary judgment because her injuries were not reasonably discoverable within the period allowed by the statute of limitations. We disagree and, accordingly, affirm the order of the lower court.

■ Summary judgment can only be granted in clear cases where there is no genuine issue of material fact. *See, e. g., Schacter v. Albert*, 212 Pa.Super. 58, 239 A.2d 841 (1968). *See also* Pa.R.Civ.P. 1035(b). Additionally, the evidence must be viewed in the light most favorable to the non-mov-

ing party and all doubts must be resolved against the moving party. *See Thompson Coal Co. v. Pike Coal Co.*, 488 Pa. 198, 412 A.2d 466 (1979); *Just v. Sons of Italy Hall*, 240 Pa.Super. 416, 368 A.2d 308 (1976). While the question of reasonableness is normally left for the jury, *Ragan v. Steen*, 229 Pa.Super. 515, 331 A.2d 724 (1974), that issue may be taken from a jury when the court concludes that fair and reasonable persons could not differ in their conclusions based on the available facts. *See Just v. Sons of Italy Hall, supra*, 240 Pa.Super. at 428, 368 A.2d at 314. *Cf.* Restatement (Second) of Torts § 328B, comment g (1965).

Viewed according to these standards, the facts of this case are as follows. On January 1, 1974, appellant broke her right arm when she fell on the steps of her residence. She went immediately to Chestnut Hill Hospital where x-rays were taken and a steel plate was surgically implanted. Dr. Horvath, who performed the operation, placed appellant's arm in a cast. In response to appellant's complaints of pain and tightness, Dr. Horvath removed the cast, opened blisters which had developed on appellant's wrist, and replaced the cast. Three or four days later, the second cast was removed because appellant's skin had begun to peel. Appellant, who testified at her deposition that her arm "looked like hamburger" where the skin had peeled, never informed Dr. Horvath of the pain she still suffered.

Appellant later told Dr. Horvath that she wanted to go home to her family in Maine because she was unable to care for herself. She requested her records so her family physician could continue treatment. On the day she was discharged from the hospital, Dr. Horvath refused to release the records and told appellant to return in two weeks for observation. Three or four days later, appellant returned to the hospital because her arm had begun to smell. Although Dr. Horvath was unavailable, another doctor then allegedly refused to treat appellant because she was a patient of Dr. Horvath.

On January 22, 1974, appellant travelled to Maine and consulted her family physician, Dr. Pierson. Dr. Pierson

removed appellant's cast and referred her to Dr. Williams because he could not "do anything for her." Dr. Pierson did, however, advise appellant that a cast was unnecessary for her treatment and that her condition looked like gangrene. The next day, Dr. Williams took a skin sample, prescribed treatment, and referred appellant to Dr. Johnson. Dr. Johnson's February 4, 1974, examination revealed a 3″ by 4″ area of gangrenous skin and subcutaneous tissue on the right forearm from which he drained a quantity of pus. Appellant's fingers and wrist were contracted in a claw-like position, unable to extend or flex. Dr. Johnson immediately hospitalized appellant.

While hospitalized, appellant underwent daily operations to remove the dead tissue from the infected area. The surgical plate, which was found to be loose and floating, was removed. After appellant was released on March 29, 1974, she learned that Dr. Johnson believed that her condition was the result of Dr. Horvath's treatment.

On December 30, 1975, appellant filed a complaint against appellees in the federal court in Maine. That action was dismissed on March 12, 1976, for lack of jurisdiction. Twelve days later, on March 24, 1976, appellant commenced this action by filing a writ of summons. Appellees' answer raised the defense of the statute of limitations. After taking appellant's deposition, appellees filed a motion for summary judgment on the basis of the statute of limitations. The lower court granted the motion and dismissed the action. This appeal followed.

Appellant contends that the lower court erred in holding, as a matter of law, that she reasonably should have discovered her injuries prior to March 24, 1974. We disagree. The applicable statute of limitations provided, in pertinent part, that "[e]very suit hereafter brought to recover damages for injury wrongfully done to the person . . . must be brought within two years from the time when the injury was done and not afterwards." Act of June 24, 1895, P.L. 236, § 2, 12 P.S. § 34 (repealed).* "The injury is done when the act

* For current version, see 42 Pa.C.S.A. § 5524(2).

heralding a possible tort inflicts a damage which is physically objective and ascertainable." *Ayers v. Morgan,* 397 Pa. 282, 290, 154 A.2d 788, 792 (1959).

Under the law of Pennsylvania, it is the duty of the one asserting a cause of action against another to use all reasonable diligence to properly inform himself of the facts and circumstances upon which the right of recovery is based and to institute the suit within the prescribed statutory period: *Patton v. Commonwealth Trust Co.,* 276 Pa. 95, 119 A. 834 (1923); *Turtzo v. Boyer,* 370 Pa. 526, 88 A.2d 884 (1952). . . . Likewise, if the existence of the injury is not known to the complaining party and such knowledge cannot reasonably be ascertained within the prescribed statutory period, the limitation does not begin to run until discovery of the injury is reasonably possible. See *Gottshall v. Langdon & Co.,* 16 Pa.Super[ior Ct.] 158 (1901); *Lewey v. Fricke Coke Co.,* 166 Pa. 536, 31 A. 261 (1895); *Ayers v. Morgan,* 397 Pa. 282, 154 A.2d 788 (1959); *Smith v. Bell Telephone Co. of Pa.,* 397 Pa. 134, 153 A.2d 477 (1959).

*Schaffer v. Larzelere,* 410 Pa. 402, 405–06, 189 A.2d 267, 269–270 (1963). *See also Acker v. Palena,* 260 Pa.Super. 214, 393 A.2d 1230 (1978); *Ragan v. Steen,* 229 Pa.Super. 515, 331 A.2d 724 (1974). *Compare Barshady v. Schlosser,* 226 Pa.Super. 260, 313 A.2d 296 (1973) (opinion of HOFFMAN, J., in support of reversal).

█ The record clearly shows that appellant reasonably should have discovered her injury before March 24, 1974. Appellant knew that Dr. Horvath was the only doctor who treated her at Chestnut Hill Hospital for her broken arm. She was aware that the serious skin problems which closely followed her surgery had developed before she was discharged from the hospital. She knew that her arm hurt greatly and smelled bad, and that her skin had blistered and peeled. Less than one month after the surgery, appellant was informed by her family physician that her arm was gangrenous. He had also told her that her arm had required no cast because a plate had been installed. On February 4,

1974, after consultation with two specialists and much discomfort, appellant was hospitalized and underwent a series of operations to remove the gangrenous tissue and the surgical plate. Moreover, appellant knew that her arm was claw-like and lacked sensation and movement. Under these circumstances, we conclude that the lower court did not err in granting the motion for summary judgment.

Order affirmed.

BROSKY, J., files a concurring opinion.

BROSKY, Judge, concurring:

I concur in the result reached in the majority's opinion. However, I believe that the court should address the appellant's contention that the statute of limitations should not begin to run until she was told that another doctor believed that she had been a victim of malpractice.

While this information may have led her to believe that she could successfully bring an action against the appellees, it was not her knowledge that she had a cause of action, but rather her awareness that she had suffered an injury, that caused the statute of limitations to begin to run.

In a recent decision, this court explained that the proper view is that a potential plaintiff need not have knowledge that he has a cause of action in order for the statute to begin to run. *Anthony V. Koppers Company , Inc. v. Bethlehem Steel Corporation*, 284 Pa.Super. 81, 425 A.2d 428 (1980). In the absence of fraud or concealment, the statute begins to run when a tort is ascertainable. *Keating v. Zemel*, 281 Pa.Super. 129, 421 A.2d 1181 (1980). See *United States v. Kubrick*, 441 U.S. 111, 100 S.Ct. 352, 62 L.Ed.2d 259 (1979).

We find no evidence of fraud or concealment in the instant case.

Appellant had all the information she needed to discover her injury prior to March 24, 1974. Her injury was physically ascertainable during her first hospital stay in January, 1974. On January 22, 1974, she was told that her arm

appeared to be gangrenous. Prior to January 22, appellant had been treated only by appellees. Therefore, not only the injury itself, but its cause was reasonably discoverable well before March 24, 1974. For this reason, I must concur in the result reached by the majority and affirm the decision of the lower court.