Benson Albert CIPRUT and
Michael Ciprut

v.

Dr. John Royal MOORE and Temple
University and Shriners Hospital.

Civ. A. No. 78–2951.

United States District Court,
E. D. Pennsylvania.

Sept. 18, 1981.

Allen L. Rothenberg, Philadelphia, Pa.,
for plaintiffs.

Joseph C. DeMaria, Philadelphia, Pa., for
Shriners Hospital.

Francis E. Shields, Philadelphia, Pa., for
Dr. John Royal Moore.

T. E. Byrne, Philadelphia, Pa., for Temple University.

## MEMORANDUM OPINION AND ORDER

VanARTSDALEN, District Judge.

### I. INTRODUCTION

The defendants in this malpractice action, a surgeon and two Philadelphia hospitals, move for summary judgment in their favor under Rule 56 of the Federal Rules of Civil Procedure, contending that the plaintiffs' claim is time-barred under the statute of limitations. Plaintiffs counter that the statute was tolled until within two years of the filing of the action. They assert, moreover, that the existence of genuine issues of material fact precludes the granting of summary judgment. They further contend that the defendants should be estopped from invoking the statute of limitations.

For the reasons stated below, the defendants' motion for summary judgment will be granted.

### II. FACTS

There is general agreement as to the factual background relevant to the disposition of this matter. In early September, 1961, the plaintiff Benson Albert Ciprut (Albert), then age nine, was hospitalized for corrective surgery on his severely bowed legs. He was admitted to Temple University Hospital and placed under the care of Dr. John Royal Moore. Dr. Moore performed a left tibial spring osteotomy on September 5, 1961, and a right tibial spring osteotomy on September 11, 1961.

Following the second procedure, Albert developed circulatory difficulties in the right leg which necessitated further surgery on September 14, 1961. On October 31, 1961, a portion of Albert's right foot was amputated because it had become gangrenous. He was discharged from Temple University Hospital on November 11, 1961, for follow-up care at Shriners Hospital in Philadelphia, where he was hospitalized between November 11, 1961 and November 25, 1961; November 30, 1961 and April 10, 1962; and April 11, 1962 and February 15, 1964. During these times, Dr. Moore continued to participate in Albert's care, a portion of which consisted of further surgical procedures. On February 15, 1964, Albert was transferred to Shriners Hospital in Los Angeles and received no further care from Dr. Moore. Eventually, while Albert was in California, his right leg was amputated below the knee and additional surgery was performed on his left foot to alleviate drop foot, a condition in which the foot becomes permanently bent in a downward position.

In 1972 or 1974, Dr. Aksitoe, the former family physician of the Cipruts, visited them in their Los Angeles home. He saw Albert and expressed sympathy over his difficulties in walking. Mr. Michael Ciprut (Albert's Father) did not ask for, nor did Dr. Aksitoe volunteer, an opinion as to the reasons for Albert's amputation.

Albert's father did not see Dr. Aksitoe again until September 1976, when they met in Istanbul. At that time, Dr. Aksitoe revealed to Mr. Ciprut his conviction that Dr. Moore had "made some mistakes" and been negligent in his care of Albert. Dr. Aksitoe voiced the opinion that the gangrene and resultant loss of Albert's right foot could have been avoided had the necessary measures been taken by Dr. Moore after the first appearance of symptoms. Dr. Aksitoe further expressed his belief that the hospital staff, the resident doctors, the nurses and all personnel were "guilty."

On September 1, 1978, Benson Albert Ciprut and his father, Michael Ciprut, filed suit against Dr. Moore, Temple University Hospital and Shriners Hospital of Philadelphia, asserting in their complaint, *inter alia*, that the "plaintiff, Benson Albert Ciprut, was not made aware of the negligence of the defendants until on or after September 6, 1976." Plaintiffs' Complaint at 6.

### III. DISCUSSION

#### A. *The Discovery Rule*

The plaintiffs contend that, although the alleged negligent acts occurred in the early 1960's, the statute of limitations in their

action did not begin to run until 1976, when Dr. Aksitoe first revealed his opinion that Dr. Moore had been negligent. They assert that the seminal case of *Ayers v. Morgan*, 397 Pa. 282, 154 A.2d 788 (1959), stands for the proposition that the statute of limitations in malpractice actions runs from the time of the plaintiffs' discovery of the existence of a cause of action. In doing so, the plaintiffs misstate both the holding in *Ayers* and the law of Pennsylvania concerning the so-called "discovery rule."

Pennsylvania law is controlling on this issue. It provides clear guidance on the running of the statute of limitations in malpractice cases. The Pennsylvania Supreme Court in *Ayers* made clear that, under the discovery rule, a suit for malpractice must be brought within two years from the date "when the act heralding a possible tort inflicts a damage which is physically objective and ascertainable." *Ayers, supra* at 290, 154 A.2d at 792. Such a rule is necessary to prevent the harsh result of the statute running out during a period of time in which a plaintiff has no way of discovering an injury, *e.g.*, the time after an operation during which a foreign object, erroneously left in a patient's operative site, produces no symptoms.

■ Since *Ayers*, courts have grappled with the question of what type and amount of information must be known or knowable to a plaintiff before the limitations period begins. The Superior Court of Pennsylvania recently adopted a test, consistent with *Ayers*, mandating that three independent phases of knowledge be discovered or reasonably discoverable by the plaintiff before the statutory period commences: (1) knowledge of the *injury*; (2) knowledge of the *operative* cause of the injury; and (3) knowledge of the *causative relationship* between the injury and the operative conduct. *Coyne v. Porter-Hayden Co.*, 428 A.2d 208, 209 (Pa.Super.Ct.1981); *Anthony v. Koppers Co., Inc.*, 428 Pa.Super. 81, 425 A.2d 428, 436 (1980). The Superior Court made clear that a plaintiff need not have knowledge of the existence of a possible cause of action for the statute to begin to run. *An-*

*thony, supra* 425 A.2d at 436. The *Anthony* court cited the United States Supreme Court as stating "the better rule" in *United States v. Kubrick*, 444 U.S. 111, 100 S.Ct. 352, 62 L.Ed.2d 259 (1979), when it rejected the view that knowledge of a cause of action is necessary. *Anthony, supra* 425 A.2d at 436, *citing Kubrick, supra*, 444 U.S. at 122, 100 S.Ct. at 359.

In addition, the Supreme Court of Pennsylvania has imposed upon plaintiffs in such actions the duty to use all reasonable diligence in ascertaining facts and circumstances upon which any right of recovery may be based and to institute any action within the prescribed period. *Schaffer v. Larzelere*, 410 Pa. 402, 405–06, 189 A.2d 267, 269–70 (1963). "[M]ere mistake, misunderstanding or lack of knowledge is not sufficient to toll the running of the statute of limitations." *Walters v. Ditzler*, 424 Pa. 445, 451, 227 A.2d 833, 835 (1967). The statute also will run against persons under a disability, including minors and incompetents. *Walters, supra* at 450, 227 A.2d at 835.

Thus, the relevant inquiry in this case is confined to the plaintiffs' knowledge of the facts and circumstances surrounding Albert's injury, its operative cause and the causal relationship between the injury and operative conduct. The plaintiffs' lack of awareness of any negligence on the part of defendants or of the possible existence of a cause of action is simply irrelevant for purposes of the statute of limitations. In addition, Albert's minority and the existence of language or cultural barriers did not and do not, under Pennsylvania law, serve to toll the statute.

*B. Summary Judgment and the Issue of Reasonableness*

■ On a motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure, the moving party must bear the burden of showing the absence of a genuine issue as to any material fact, and, for this purpose, the material set forth must be viewed in the light most favorable to the opposing party. *Adickes v. S. H. Kress &*

820

*Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970); *Major's Furniture Mart, Inc. v. Castle Credit Corp.*, 602 F.2d 538, 539 (3d Cir. 1979); *Drexel v. Union Prescription Centers, Inc.*, 582 F.2d 781, 784 (3d Cir. 1978). The moving party must show it is entitled to judgment as a matter of law. *Drexel, supra* at 784. The function of the court in deciding such a motion is not to decide issues of fact, but to determine whether there is any genuine issue of material fact to be tried, defined as one which may affect the outcome of the litigation. *Hollinger v. Wagner Mining Equipment Co.*, 505 F.Supp. 894, 897–98 (E.D.Pa.1981). The plaintiffs assert that genuine issues of material fact exist in the instant action concerning the reasonableness of their discovery.

While the issue of the reasonableness of a plaintiff's discovery is usually one for the jury, it can be taken from the jury when the court concludes that fair and reasonable persons could not differ in their conclusions based on available facts. *Wallace v. Horvath*, 283 Pa.Super. 179, 423 A.2d 1047 (1980). *See Just v. Son's of Italy Hall*, 240 Pa.Super.Ct. 416, 368 A.2d 308 (1976). Further, where the evidence is such that the court could only permit the issue to be resolved one way, summary judgment is appropriate. *Grigsby v. Sterling Drug, Inc.*, 428 F.Supp. 242 (D.D.C.1975), *aff'd*, 543 F.2d 417 (D.C.Cir.1976), *cert. denied*, 431 U.S. 967, 97 S.Ct. 2925, 53 L.Ed.2d 1063 (1977). *See Hoeflich v. William S. Merrell Co.*, 288 F.Supp. 659 (E.D.Pa.1968); *Carney v. Barnett*, 278 F.Supp. 572, 575 (E.D.Pa. 1967).

The plaintiffs rely on three cases to support the claim that the reasonableness of their discovery is a genuine issue of material fact. *See Taylor v. Tukanowicz*, 290 Pa.Super. 581, 435 A.2d 181 (1981); *Acker v. Palena*, 260 Pa.Super.Ct. 214, 393 A.2d 1230 (1978); *Barshady v. Schlosser*, 226 Pa. Super.Ct. 260, 313 A.2d 296 (1973). All three cases are clearly distinguishable from the facts of this case.

In both *Acker* and *Barshady*, the defendant physicians had represented to the plaintiffs that the injuries they were suffering were merely temporary, when, in fact, they were of a permanent nature. In reliance on those representations, the plaintiffs delayed filing their actions until the statutory period had expired. The superior court in each action held that the statute of limitations had been tolled because, under the *Ayers* rule, the plaintiffs could not have reasonably discovered their injuries. *Acker, supra* 260 Pa.Super. at 223–24, 393 A.2d at 1234; *Barshady, supra*, 226 Pa.Super. at 265, 313 A.2d at 299. In the instant case, there are no facts or circumstances to indicate an analogous situation. Albert's injuries were obvious and there were no representations made by defendants that they were merely temporary.

In *Taylor*, the plaintiff claimed he was unaware of the extent of his injuries resulting from back surgery during the appropriate statutory period. The reasonableness of the discovery of the true nature and extent of his injuries was held to be a genuine issue of material fact which precluded summary judgment. *Taylor, supra*, 435 A.2d 183. In the instant case, the true nature and extent of Albert's injuries were undeniably apparent within the statutory period— amputation and drop foot are unequivocal conditions.

Notwithstanding the distinctions between the instant case and those cases relied on by plaintiffs, this court must determine whether the reasonableness of the plaintiffs' conduct in discovering Albert's injury presents any genuine issue of material fact. If it does, summary judgment must be denied. This inquiry is framed by the three-pronged test set forth by the Pennsylvania courts:

(1) *The injury*: Following surgery to correct bowing of the legs, Albert developed gangrene of the right foot, necessitating amputation. The left foot subsequently became afflicted with drop foot. There can be no doubt that these injuries would be immediately discoverable by even the most untrained observer. No genuine issue of material fact exists as to this part of the test.

(2) *The operative conduct*: The plaintiffs, of course, were necessarily aware of the fact that they placed Albert under the

care of defendant Dr. Moore, that he had performed a number of surgical procedures on Albert, and that Albert was a patient first in defendant Temple University Hospital and then in defendant Shriners Hospital of Philadelphia. No genuine issue of material fact exists as to this second part of the test.

(3) *The causal relationship*: The Pennsylvania Superior Court case of *Wallace v. Horvath, supra,* is analogous to the instant action and provides guidance as to whether a genuine issue of material fact exists in the instant case concerning the reasonableness of plaintiffs' discovery of the causative relationship between the injury sustained by Albert and the operative conduct of defendants. *See Wallace, supra.* In *Wallace,* the plaintiff broke her arm on January 1, 1974, and was immediately treated with a surgical implant and casting. Pain and deterioration of the skin over the area led to further treatment and removal of the cast. The area continued to blister and peel and give off a strong odor. On February 14, 1974, the plaintiff was informed that the skin over the area had become gangrenous and further surgery ensued. Following discharge from the hospital on March 29, 1974, the plaintiff was informed by another physician that her condition was a result of the treatment by the first physician. Plaintiff filed suit against the first physician on March 24, 1976. The Pennsylvania Superior Court affirmed the holding of the lower court that the plaintiff, as a matter of law, should have discovered her injury before March 24, 1974—five days before the conversation with the second physician. *Wallace, supra* 423 A.2d at 1049–50. The court focused on the plaintiff's knowledge of the fact that the defendant had been her treating physician, her necessary awareness of the physical symptoms of her injury and the fact that the gangrene occurred prior to discharge from the hospital, in finding that she, as a matter of law, should have reasonably discovered her injury before being told of the second doctor's opinion. *Wallace, supra* 423 A.2d at 1050.

In the instant case, Albert entered Temple University Hospital for surgery to correct bowed legs. In the immediate post-operative period he developed circulatory problems which led to further procedures, including additional surgery and amputation of a portion of the right foot during the same admission. Following this initial admission, Albert had a further long period of hospitalization. Between September 1961 and February 1964, Albert was confined in one or another hospital for all but a total of six days. During this period he was treated for drop foot and, at a later date, a below-the-knee amputation was necessary.

In view of the obvious and virtually uninterrupted chain of events following the initial surgery, the plaintiffs, as a matter of law, must be charged with discovery of the causal relationship between the injury and the operative act. Although the existence of infirmities does not toll the statute of limitations, no reasonable person, regardless of cultural background or language difficulties, could fail to see that such dramatic consequences were causally related to the initial surgery and its sequelae. Here, as in *Wallace,* there exists no genuine issue of material fact.

### C. Estoppel and the Statute of Limitations

One further issue remains to be addressed. The plaintiffs claim that they were lulled into a false sense of security by statements made to them by physicians during the course of Albert's treatment and, consequently, failed to file their cause of action during the appropriate statutory period.

Pennsylvania law provides that:

if, through fraud, deception or concealment of facts, [a defendant] lulls an injured person or his representatives into a sense of security so that such person's vigilance is relaxed, then [the defendant] is estopped from evoking the statute .... [T]he fraud which will toll the statute and effect an estoppel need not be fraud in the strictest sense, i.e., inclusive of an intent to deceive, but may be fraud in the broad sense, i.e., inclusive of an unintentional deception ....

*Walters, supra* 424 Pa. at 449, 227 A.2d at 835 (citations omitted); *Acker, supra* 260 Pa.Super. at 221–22, 393 A.2d at 1233.

In *Acker, supra,* a physician's assurances that the plaintiff's pain was from an emotional reaction and the symptoms she experienced were temporary were held to be a sufficient concealment to toll the statute of limitations. *Acker, supra* at 224, 393 A.2d at 1234. No such assurances were made in the instant case.

■ The burden is on the plaintiffs in this case to establish estoppel by evidence that is clear, precise and convincing. *Huber v. McElwee-Courbis Construction Co.,* 392 F.Supp. 1379, 1385 n.10 (E.D.Pa.1974); *Nesbitt v. Erie Coach Co.,* 416 Pa. 89, 204 A.2d 473 (1964). They did not allege fraud or concealment in their complaint. In their motion to oppose summary judgment, they state that the remarks of physicians to the effect that everything was fine, that they should not worry and should leave things in the hands of the doctors, and that further surgery was necessary for future treatment, lulled them into a false sense of security. Such general reassurances do not rise to the level of the specific representations made in *Acker.* Moreover, such reassurances cannot reasonably account for a delay of seventeen years in filing suit.

Plaintiffs further contend that they relied on statements by Dr. Moore that Albert's surgery was in the normal course of recovery. Assuming *arguendo* that Dr. Moore did make such a statement, no reasonable person could have believed that amputation was a part of the normal course of recovery for correction of bowed legs. Such an assertion is simply incredible.

In sum, the plaintiffs have failed to meet their burden of showing facts necessary to estop the defendants from raising the statute of limitations.

## IV. CONCLUSION

No genuine issues of material fact remain for trial. Plaintiffs must, as a matter of law, be held to have discovered Albert's injury well before 1976. Since there are no factual assertions by the plaintiffs sufficient to establish an estoppel, the running of the statute of limitations serves to bar recovery by them. Summary judgment must be granted in the defendants' favor.